# South and North Alabama Railroad Company v. Jones.

| 56 | 507 |
|----|-----|
| 104 | 190 |
| 56 | 507 |
| 122 | 366 |

*Action for Damages against Railroad Company for Killing Cattle.*

1. *Charge containing equivocal or elliptical expressions.*—This court will put a reasonable construction on the language used in affirmative charges given by the primary court, and will not indulge in hypercriticism to put that court in error: if an elliptical or ambiguous expression is used, which might mislead the jury, the attention of the court should be called to it by a request for an explanatory charge.

2. *General exception to entire charge.*—When a charge contains two or more distinct, separable propositions, an exception "to this charge, and to each part thereof, separately and successively," is only a general exception to the entire charge, and cannot be sustained unless the entire charge is erroneous.

3. *Diligence required of railroad engineer in frightening off cattle.*—It is the duty of a railroad engineer, having charge of a running train, and seeing an ox or cow ahead, in close proximity to the track, and moving in a line with it, under circumstances indicating danger of its getting on the track, promptly to use all proper precautions to frighten it away, and to. check, or even stop his locomotive, if necessary; and failing to use such precautions at the proper time, the company is liable for the loss of the animal, although it got on the track suddenly, and so close in front of the train that it was impossible to prevent a collision.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. LOUIS WYETH.

This action was brought by Daniel Jones, against the appellant, to recover damages for the loss of an ox, alleged to have been. killed by one of the defendant's locomotives, through the negligence of the engineer in charge of the train;

and was commenced before a justice of the peace, on the 13th April, 1875. The case having been carried by appeal, at the instance of the defendant, into the Circuit Court, the plaintiff there filed a complaint, to which a demurrer was interposed, but overruled; and the defendant having then pleaded "the general issue, in short by consent, with leave to give in evidence any matter that could be legally pleaded in bar of the action," issue was thereupon joined, and there was a trial by jury.

"On the trial," as the bill of exceptions states, "the plaintiff testified, as a witness for himself, that on or about the 21st March, 1875, an ox belonging to him was killed by a locomotive and train of cars belonging to the defendant, and going north on its railroad, about a half mile beyond Cullman in said county; that Capt. Simpson was the engineer in charge of the train at the time; that he (said witness) was within two hundred yards of the place where his ox was so killed, but did not see the killing, nor know of it, until some ten or fifteen minutes after the collision; that he did not hear the bell, nor the whistle; that the railroad was entirely straight for more than a mile each way at that place, and was on a level, or nearly so, with the surface of the earth; that there were no ditches on the sides of the road at that place,. except very shallow ones to keep the water from the track; that the ox was badly crushed by the collision, his horns and back broken, and was worth about fifty dollars. The plaintiff introduced two other witnesses, whose testimony was substantially like his own, except that one of them did not put any value on the ox, and neither of them saw the collision.

"The plaintiff having closed, said Simpson testified, as a witness for the defendant, that he had been an engineer since 1858, and was in charge of the train when plaintiff's ox was killed; that the train was a passenger train, and was going at the usual speed, which was about twenty-five miles per hour, when he first saw the ox, some distance, say one hundred and fifty, or two hundred yards, ahead of the train, not far from the track, and moving in a direction towards the track; that he instantly applied the brakes (of the first class, and under his control), and kept the brakes firmly down, until he discovered that the ox had changed his course, turning from the track; that the ox again turned, almost immediately, in the direction of the track, when he (witness) instantly applied the brakes again, and kept them firmly down until the collision occurred; that the ox, after said last turn, moved pretty rapidly ahead of the engine, and on the side of the track and of the cross-ties, for some fifty or sixty steps,

when, coming to a small mud-hole, it suddenly wheeled, and came on the track, with its head towards the engine, and within six or eight feet of it, and continued to move towards the engine until the collision; that it was impossible by any means whatever, from the time the ox so came on the track, to prevent the collision; that the brakes had been and were firmly applied and down, and the speed had been slackened down to about three miles per hour, and still continued to slacken, until the ox was disabled, bruised, and thrown from the track, when the speed was not more than one mile per hour; that there was no obstruction on the track, no public road crossing, nor any curve, or depot, or town within a quarter of a mile; that he (said engineer) did all that could be done to prevent such collision, and omitted nothing that could be of any avail to prevent it, after the ox went on the track; that he did not ring the bell, nor sound the whistle, nor reverse the engine, because he had no time to do so after the ox came on the track, and because the ringing of the bell, or sounding of the whistle, before the ox came on the track, would have been as likely to make it come on the track as to make it move away; and that the ringing of the bell, or sounding the whistle, and reversing the engine, would have been unavailing to prevent the collision. One Bowman, a witness for defendant, testified that, in plaintiff's neighborhood, a yoke of oxen was worth from thirty to fifty dollars, and a single ox about half of that sum.

"The foregoing was, in substance, all the evidence introduced on the trial of the cause; and upon this evidence, without more, the court charged the jury, of its own motion, as follows: 'If the jury believe, from the evidence, that the ox was killed by the defendant's train, and that the engineer of the train saw the ox within ten or fifteen feet of the road, or running close by the road-bed, on a line with it, and within a few feet of the road and train as it was moving, and under circumstances indicating danger of its getting on the track; then it was the duty of the engineer, to use all means in his power to frighten away the ox, until the danger had ceased (of which you are to judge from the evidence); and failing to do so, he was guilty of negligence, for which the defendant must respond.' To this charge, and to each part thereof, separately and successively, the defendant duly excepted; and then requested the court to give the following written charge: 'If, from the time the ox got on the track, ringing the bell, blowing the whistle, and reversing the engine, would have been unavailing to prevent the collision, and could not possibly have prevented it; and if, from the time the ox got on the track, the engineer did all that could have been of any avail

to prevent the said collision; then, upon this state of facts, the defendant is not liable for such collision." The court refused to give this charge, and the defendant excepted to its refusal."

The charge given by the court, the refusal of the charge asked, and the overruling of the demurrer to the complaint, are now assigned as error.

RICE, JONES & WILEY, for appellant.

STONE, J.—The affirmative charge given in this cause, under a severe grammatical criticism, might be construed as invading the province of the jury, in pronouncing on the effect of the evidence. We do not think, however, that such was the intention of the presiding judge. By the phrase, "failing to do so," we think he meant, *if the engineer failed to do so*; and we think that, taken in the connection in which it was uttered, the jury so understood the expression. Such ellyptical forms of expression are not unusual, either in public or private speaking, and they rarely mislead. If the charge was ambiguous, or likely to mislead, it was both the privilege and duty of counsel to call the court's attention to it, so that it might be corrected—See 1 Brick. Dig. 342, § 99; *Ib.* 336, § 10; *Carlisle v. Hill,* 16 Ala. 398; 1 Brick. Dig. 251, §§ 123, 126. Hypercriticism should not be indulged, in construing bills of exceptions.

2. When an exception is reserved to a charge which contains two or more distinct, or separable propositions, it is the duty of counsel to direct the attention of the court to the precise point of objection. An exception "to this charge, and to each part thereof, separately and successively," will be construed as a general exception to the entire charge.— *Milton v. Rowland,* 11 Ala. 732; *Taylor v. Strickland,* 37 Ala. 642.

3. Construed as above, we think the charge given is free from error. We agree with the presiding judge, that if the ox was seen by the engineer, "within ten or fifteen feet of the road, or running close by the road-bed, on a line with it, and within a few feet of the road and train as it was moving, and under circumstances indicating danger of its getting on the track; then it was the duty of the engineer, to use all means in his power to frighten away the ox, until the danger had ceased." The reason on which accountability rests, in such case, is, that no one shall do another an injury, either wantonly, or through negligence. Reasonable diligence and care must be maintained, in preservation of the property-rights of others. *Sic utere tuo, ut alienum non lædas.* The

engineer, if he saw the ox in dangerous proximity to the track, and under circumstances indicating danger of its getting on the track, should have taken steps promptly to frighten him away; or, if need be, should have arrested the motion of his train, if possible, rather than incur the hazard of destroying another's property. He should not have waited for the ox to get on the track, if there was apparent danger of his doing so. The charge given fairly submitted to the jury the question of the engineer's negligence.

What we have said is decisive to show that the charge asked should not have been given. It placed the engineer's duty on too narrow and technical a foundation.

The judgment is affirmed.