| 91 | 483 |
| 94 | 634 |

| 91 | 483 |
| 96 | 263 |
| 96 | 445 |

| 91 | 483 |
| 122 | 366 |

# Kansas City, Memphis & Birmingham Railroad Co. *v.* Watson.

### *Action for Damages for Killing Mule.*

1. *Liability of railroad company for injuries to stock; duties of engineer, by statute, and at common law.*—Under statutory provisions (Code, § 1144), the engineer of a railroad train, seeing an animal on the track, is required to use all the means in his power known to skillful engineers, in order to stop the train; and when he sees an animal in dangerous proximity to the track, or by proper care and diligence could have seen it, the common-law duty rests on him to use proper efforts to frighten it away, and, if necessary, to stop the train; but, when the animal, though near the track, is not discovered in fact, nor discoverable by the use of proper care and attention, until it suddenly leaps on the track in front of the engine, so near that no appliances can stop the train in time to prevent a collision, the engineer is not required to attempt to do so.

2. *Same; charge as to.*—Where the killing of plaintiff's mule by the train is admitted, but the evidence is conflicting as to the circumstances attending the killing, a charge which instructs the jury to find for the plaintiff, "if the defendant's engineer was negligent in not seeing the mule on the track, and not keeping a proper look-out near the track," is a reversible error.

APPEAL from the Circuit Court of Lamar.

Tried before the Hon. S. H. SPROTT.

This action was brought by C. C. Watson, against the appellant corporation, to discover damages for the killing of plaintiff's mule; and was commenced on the 24th August, 1888. The mule was killed on the 28th February, 1888, and the fact that it was killed by one of defendant's trains was not disputed; but the evidence was conflicting as to the circumstances attending the killing. The plaintiff himself testified "that there were tracks on the road-bed, east of where the mule was found lying, for one hundred yards or more," which showed that the animal was running; and he introduced two witnesses, whose testimony corroborated his in some respects. One of these witnesses, who was about three hundred yards distant when the accident happened, stated that the tracks "extended up the road-bed for about one hundred yards to where the mule was knocked off;" that they were the tracks of only one animal, though there were other tracks crossing the road from one side to the other; "that the tracks came from the south side of the road; that it was in an open field, and the railroad was straight for a considerable distance." The other witness, who went to

the scene of the accident soon after it happened, testified that the tracks of the mule "came on the road from the south, travelled eastward a little, in the direction from which the train was approaching, then turned, appeared to walk about twenty-five yards down the road westward, and then appeared as if running for seventy-five yards, to the place where it was knocked off;" that other tracks crossed the road, "but he saw no tracks crossing from the north side; that it was in an open field, and the railroad track was straight for a considerable distance." The bill of exceptions adds: "Plaintiff's evidence further tended to show that there was no obstruction of any kind on the south side of the road at that place, but it was an open field."

The engineer in charge of the train testified, on behalf of the defendant, after stating that he had shut off steam, and blown the whistle as he approached the station where he was to stop: "Soon after I saw the mule, running obliquely towards the track. I immediately applied the air-brakes, and started to reverse the engine, when my fireman, said 'All right, it is gone.' The mule came on the track from the north side, about thirty feet ahead of the engine, and ran down the track twenty or thirty feet, when the engine struck it. I kept a constant look-out, and discovered the mule as soon as it could be discovered. It came out from behind a fence, which was about five feet high, and which prevented me from seeing it sooner; and there was a slight depression in the ground there." The fireman on the train, another witness for the defendant, testified that, when the engineer put on the air-brakes, he looked out to see what was the matter, "and saw the mule come on the track from the north side, about twenty-five feet ahead of the pilot; that it ran down the track twenty-five or thirty feet, when the engine struck and knocked it off." Each of these witnesses testified, also, that every possible effort was made to prevent the injury, after the mule was discovered on the track.

This being all the evidence except as to the value of the mule, the court gave two charges to the jury, on request of the plaintiff. The first of these charges is set out in the opinion, and the second was in these words: "The duty of an engineer begins with the dangerous proximity of stock to the track, and before they actually get on the track; and if the engineer, by keeping a proper look-out, could have seen the mule within a short distance from the track, and indicating danger of getting on the track, it was his duty not only to frighten it away, but to stop his locomotive, if necessary; and failing to use such precautions at the proper time, the company is liable for

the loss of the animal, although it got on the track suddenly, and so close in front of the train that it was impossible to stop the train."

The defendant excepted to each of these charges, and they are here assigned as error.

HEWITT, WALKER & PORTER, and NESMITH & SANFORD, for appellant.

S. J. SHIELDS, contra.

CLOPTON, J.—That the mule for injury to which appellee sues, was killed by the locomotive of defendant, was an admitted fact on the trial. The controverted questions were, whether the engineer kept a proper look-out, or by proper watchfulness could or ought to have seen the mule in time to prevent the injury. As to these questions of fact, the evidence varied. The engineer testified that he kept a steady look-out, and could not have discovered the mule earlier than he did, and when seen, no human efforts could have stopped the train in time to avoid a collision. In this statement, he is, in some respects, corroborated by the fireman. Plaintiff's witnesses testified to facts tending to show that the mule could have been discovered in time, had due care and diligence been observed, and the injury avoided had proper efforts been made. The court, at the request of plaintiff, instructed the jury, if defendant, through its engineer, was negligent in not seeing the mule on the track, and not keeping a proper look-out near the track, they will find for the plaintiff; and also charged them separately as to the duty of the engineer on seeing an animal in close and dangerous proximity to the track.

By section 1144 of the Code, when the engineer perceives an obstruction on the track, he is required to use all the means in his power, known to skillful engineers, in order to stop the train. This requirement of the statute is subject to the following qualification: when an animal, not being on the track, and not discoverable by due watchfulness, suddenly leaps thereon, in front of, and so near to the engine, that no human appliances would avail to stop the train in time to prevent collision, the engineer is not required to attempt its stoppage. Independent of this statutory duty, there exists a common-law duty when an animal is discovered in close proximity to the track, under circumstances indicating danger. In such case, it becomes the duty of the engineer to use the usual and proper means to frighten it away, and, failing in this, to check the speed of the train, so as to bring it under control, in order

to avoid injury. Also, when the animal is not discovered because of his negligence in not keeping a proper look-out, and injury results therefrom, the company is liable as if the animal had been in fact discovered. Theese principles have been repeatedly and uniformly announced by this court.—*E. T., V. & G. R. R. Co. v. Bayliss,* 75 Ala. 466; s. c., 77 Ala. 439; *S. & N. Ala. R. R. Co. v. Jones,* 56 Ala. 507. The second charge asked by plaintiff, though it may be somewhat ambiguous, asserts the law correctly in this respect.

The charge quoted above instructs the jury to return a verdict for plaintiff, on the isolated facts of negligence in not seeing the mule on the track, and in not keeping a proper look-out near the track. The liability of defendant does not necessarily result from merely showing injury and negligence on the part of the engineer in the particular respect mentioned. Such negligence must have caused, or contributed to the injury. Without implying as a part of the hypothesis, or assuming such connection between the negligence and the injury, the charge is incomplete; and this can not be implied, or assumed, unless the fact is undisputed, or clearly proved. Also, one branch of the charge assumes as a fact, that the mule was on the track, and the other that it was near the track, and ought to have been discovered in time to prevent injury. The only evidence as to the time when the mule ran on the track, and how far in front of the engine, is that of the engineer and fireman, except the inferences that may be drawn from the tracks of the mule, as testified to by the other witnesses; and the evidence was conflicting as to whether it came on the track from the south or the north side, and the difficulty of an earlier discovery on account of a fence and depression of the ground on the south side. From the evidence, it does not follow as a conclusion of law, that had the engineer kept a proper look-out, he could have discovered the mule in time to stop the train. All these are inferences to be drawn from the evidence, and should have been submitted to the jury, whose province it is to draw conclusions of fact.

Reversed and remanded.