## GULF, C. & S. F. R. Co. *v.* WASHINGTON.

*(Circuit Court of Appeals, Eighth Circuit.* February 1, 1892.

1. **INDIAN TERRITORY—JURISDICTION OF FEDERAL COURT—AMOUNT IN CONTROVERSY.**
Under Act Cong. March 1, 1889, § 6, providing that the United States courts in the Indian Territory shall have jurisdiction in civil cases "when the value of the thing in controversy or damages or money claimed shall amount to $100 or more," such courts have jurisdiction of an action for killing stock when the total amount claimed exceeds $100, though the value of each animal is less than that sum.

2. **RAILROAD COMPANIES—KILLING STOCK—PLEADING.**
In the Indian Territory, a complaint alleging simply that defendant, while operating its railway through plaintiff's pasture, negligently killed his stock, and that the stock was killed solely through defendant's inexcusable neglect, is sufficient to withstand a general demurrer, since, under Mansf. Dig. Ark. § 5065, (in force in the territory,) a complaint will be treated as alleging every fact which can be implied from its averments by the most liberal intendment.

3. **SAME.**
In an action for the killing of stock, where plaintiff relies upon the failure of the railroad company to fence its track according to a contract, that fact must be alleged in the complaint.

4. **SAME—FENCING TRACK.**
A contract by a railroad company to fence its track through certain lands imposes upon it the same duties and liabilities with respect to the killing of stock as would be imposed by a statute requiring it to fence.

5. **SAME—DUTY OF COMPANY.**
In the Indian Territory, where neither the owners of animals nor railroad companies are required to fence, it is the duty of engineers to use reasonable care to discover stock upon the track, and to avoid injuring them when discovered.

6. **SAME.**
The fact that stock is in the Indian Territory in violation of law in no way affects the duty of a railroad company to exercise care to avoid injuring them by the running of its trains.

7. **SAME—COMPETENCY OF WITNESS.**
A witness familiar with a railroad track at a place where cattle were killed is competent to testify as to the distance at which cattle on the track could be seen by the engineer. Such testimony is not objectionable as being the statement of an opinion.

8. **SAME—CIRCUMSTANTIAL EVIDENCE.**
It is competent to prove by circumstantial evidence that cattle found dead along a railway track were killed by the company's trains.

9. **SAME—SPECIAL FINDINGS.**
In an action against a railroad company for killing stock it is within the discretion of the court to refuse to require a separate finding as to each animal sued for.

10. **IMPANELING JURY—INDIAN TERRITORY.**
In a civil case in the Indian Territory defendant is entitled to have the jury drawn and impaneled in the mode prescribed by Mansf. Dig. Ark. §§ 4013-4015. *Railway Co.* v. *James,* 48 Fed. Rep. 148, followed.

11. **APPEAL—BILL OF EXCEPTIONS.**
The court cannot consider the sufficiency of the evidence to support the verdict when the "substance" only of the evidence is contained in the bill of exceptions. To present that question all the evidence must be certified up.

12. **NEGLIGENCE—PLEADING.**
A general allegation of negligence, without stating the acts constituting negligence, is good as against a general demurrer.

13. **PLEADING—WAIVER.**
Under the settled doctrine of the United States supreme court, as well as under the Code of Arkansas, the filing of a plea to the merits after a demurrer is overruled is a waiver of the demurrer.

n Error to the United States Court in the Indian Territory.

Action by J. R. Washington against the Gulf, Colorado & Santa Fe Railroad Company to recover damages for the killing of stock. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

*E. D. Kenna, J. W. Terry,* and *C. L. Jackson,* for plaintiff in erroi.

*S. S. Merrill,* for defendant in error.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District Judges.

CALDWELL, Circuit Judge. This was an action commenced in the United States court for the third judicial division of the Indian Territory by the plaintiff against the Gulf, Colorado & Santa Fe Railway Company for the recovery of damages for stock alleged to have been injured and killed by the negligent operation of the defendant's locomotive engines and trains. The plaintiff recovered judgment for $375.72, and the defendant sued out this writ of error. The summons was in proper form, and the court rightly overruled the motion to quash it, because it did not state the nature and amount of the plaintiff's demand. Mansf. Dig. § 4968; Id. Form No. 1, p. 1251; *Railway Co.* v. *James,* 48 Fed. Rep. 148.

There was a demurrer to the complaint upon two grounds: *First,* that the court had no jurisdiction of the subject-matter of the suit; and, *second,* that it did not state sufficient facts to constitute a cause of action. The damages laid in the complaint are $468 for injuring and killing several head of stock at different times. The complaint states the value of each head of stock killed, and the value of each one is less than $100. The first act of congress regulating the civil jurisdiction of the court in the Indian Territory provides that the court shall have jurisdiction in civil cases "when the value of the thing in controversy or damages or money claimed shall amount to one hundred dollars or more." Act March 1, 1889, (25 St. U. S. p. 783, c. 333, § 6.). When the aggregate of the damages or money claimed amounts to $100, the court has jurisdiction under this section. The fact that each animal for which the plaintiff sues was worth less than $100 makes no difference, if the damages claimed for all of them amount to that sum. The last act of congress regulating the jurisdiction of the court—Act May 2, 1890, (26 St. U. S. p. 94, c. 182, § 29,)—declares that the court shall have "jurisdiction in all civil cases in the Indian Territory," with exceptions which do not affect this question. Whether this act repeals by implication the limitation on the jurisdiction contained in the act of 1889 we do not decide.

The complaint alleges that the defendant, while operating its line of railway through the plaintiff's pasture, negligently killed the stock sued for, and that the stock was killed solely through the inexcusable negligence of the defendant. It is said this statement of the cause of action is fatally defective in substance, because it merely states that the cattle were killed by the defendant while operating its road through the plaintiff's pasture, and does not state how the defendant killed them,— whether it was by running its engines and trains over or against them, or in some other manner,—and that it does not state in what the alleged negligence of the defendant consisted. The complaint is inartificially drawn. But against the assault of a general demurrer it is good under

the Code in force in that territory.  Under that Code a complaint is good on demurrer if it contains the substantial elements of a cause of action, however indefinitely or inartificially they may be stated.  Indefiniteness or uncertainty of statements in a complaint which, when construed in the most liberal manner, states the substance of a cause of action, is not a ground of demurrer, but is a defect to be corrected by motion for a more specific statement.  The complaint will be treated as alleging by implication every fact which can be implied from its averments by the most liberal intendment.  Mansf. Dig. § 5065; *Fordyce* v. *Merrill*, 49 Ark. 277, 5 S. W. Rep. 329; *Green* v. *Mayor*, 8 Abb. Pr. 27; *Meyer* v. *Railway Co.*, 7 N. Y. St. Rep. 245.  It is very well settled that a general allegation of negligence, without stating the particular acts which constituted the negligence, is good against a general demurrer. *Harper* v. *Railroad Co.*, 36 Fed. Rep. 102; *Railroad Co.* v. *Crenshaw*, 65 Ala. 566; *City of Anderson* v. *East*, 117 Ind. 126, 19 N. E. Rep. 726; *Scott* v. *Hogan*, 72 Iowa, 614, 34 N. W. Rep. 444; *McFadden* v. *Railway Co.*, 92 Mo. 343, 4 S. W. Rep. 689.  Moreover, it is the settled doctrine of the supreme court of the United States that filing a plea to the merits after a demurrer is overruled is a waiver of the demurrer. *Stanton* v. *Embry*, 93 U. S. 548; *Campbell* v. *Wilcox*, 10 Wall. 421.  And this is the rule under the Code of Arkansas, in force in the Indian Territory.  *Jones* v. *Terry*, 43 Ark. 230.

The court refused the request of the defendant to have the jury drawn and impaneled in the mode required by sections 4013–4015 of Mansfield's Digest.  This was error.  *Railway Co.* v. *James*, 48 Fed. Rep. 148.

A witness familiar with the track of the defendant's road at the place where the cattle were killed was asked how far cattle on the track could be seen in each direction by the engineer or other person on the track from the point where they were killed.  The objection to this question —that it called for the opinion of the witness—was rightly overruled.  The question related to a fact about which any one acquainted with the track, and possessed of ordinary intelligence and eye-sight, might give his opinion or judgment.  It is every-day practice in the courts for witnesses to be asked similar questions, such as the size of a room, the width of a street, the distance between two objects, and the distance a given object can be seen from a particular stand-point.  In these and like cases it is competent for a witness acquainted with the places or localities to state his best judgment, based on his personal knowledge and observation, of the localities and places.  These are matters of common knowledge, about which experts have no advantage over laymen; and to hold that a witness could not testify to the distance between objects, or the distance a given object could be seen from a particular stand-point familiar to him, unless he had actually measured the distance, would entail intolerable expense and delay in the administration of the law, and frequently result in a total failure of criminal as well as civil justice.

It was not error to refuse to instruct the jury to return a verdict for the defendant upon the ground that there was not sufficient evidence to support the plaintiff's action. There was abundant evidence to warrant the jury in finding a verdict for some of the stock killed. Besides, there was evidence tending to show that the defendant had agreed to fence its track through the plaintiff's pasture, and that the cattle strayed on the track and were killed by reason of the neglect of the defendant to fence its track according to its agreement. Nor was it error for the court to refuse to charge the jury to return a verdict for the defendant as to all stock "the witnesses did not see killed." One who kills another in secret, when no eye sees the deadly potion administered or the fatal blow struck, may be convicted of murder, and hanged on circumstantial evidence; and no reason is perceived why the same character of evidence may not be sufficient to prove that a railroad company killed a cow or a mule; and that the killing was the result of the company's negligence. Some of the cattle sued for were found, very soon after they were killed, on or near the railroad track, and the injuries and marks of violence appearing upon their bodies were such as would be inflicted by coming in contact with a moving engine or train of cars. A jury might well find from these circumstances that the cattle were killed by the defendant's trains. Whether the killing occurred through the negligence of the railroad company is not so easily proved; but that fact, like any other, may be proved by circumstances. It is competent for the plaintiff in such cases to show that the track where the cattle were killed is straight, and free from any obstruction which would obscure the view of the engineer of a train going in either direction, and that by the exercise of ordinary care and diligence the engineer could have seen cattle on the track, not only in daylight, but, by the aid of the headlight of the locomotive, in the night-time also, in time to have avoided the killing. These and any other circumstances calculated to throw light on the issue may be considered by the jury. It is the province of the jury to say whether the circumstances in any given case are sufficient to warrant a finding that the cattle which no witness saw killed were killed through the negligence of the railroad company, when there is any evidence tending to show that fact. It does not appear, as shown elsewhere in the opinion, that all the testimony in this case that was heard by the jury is before us, and we can therefore form no opinion as to its sufficiency; and the presumption that the verdict was founded on sufficient evidence must prevail.

It was not error to refuse to instruct the jury that they must make a special finding as to each animal sued for. That was a matter within the discretion of the court, and its refusal to give such a direction cannot be assigned for error.

But two exceptions are argued to the charge of the court, and these we will consider. The court instructed the jury that—

"The question of negligence is a question to be determined by all the facts and circumstances introduced before you. In cases of negligence, each case

should be determined upon its own peculiar circumstances. The railroad company owes it to the owner of stock that the agents or engineers operating the train or trains shall use care, when stock is discovered by him, to prevent injury to it; yet there is an obligation due to others from railroad companies in running their trains, which is that the agents or engineers shall keep a lookout for stock on the track; and the jury will determine from this whether the agents or engineers have used ordinary or reasonable care to prevent injuring these animals."

This instruction was probably suggested by the opinion of the court in *Railroad Co.* v. *Kerr*, 52 Ark. 162, 12 S. W. Rep. 329. It is there said:

"The extent of the duty which a railroad company owes to the owner of stock upon its track is that the engineer in charge of the train at the time shall use ordinary or reasonable care, after the stock is discovered by him, to prevent injury to it; and this negatives the idea that the engineer is bound to keep a lookout for stock. * * * There is an obligation due to others from railroad companies to preserve a strict lookout while running their trains; and, as the agents of the company, in the absence of circumstances leading to a different conclusion, are presumed to keep such lookout, it is a fair inference of fact for the jury that a watchful agent will see stock on or near the track, and that they will then determine whether he has used ordinary or reasonable care to prevent injury to it."

The court does not state who the "others" are to whom the company owes the duty to keep "a strict lookout while running its trains," and of which duty the owners of stock may avail themselves by an inference of fact to be drawn by the jury. There is no intimation of the relation those other persons sustain to the company to whom it owes this special duty. Passengers and passenger trains are doubtless within the rule enunciated; but are freight, gravel, or construction trains, or a single locomotive? In our judgment, a more satisfactory statement of the law on this point is found in other decisions of that court. In a case not referred to in the opinion last cited the court said:

"Although the mule was wrongfully on the defendant's track when he received the injury of which he died, and was not seen by the engineer, yet if, by the exercise of ordinary care and watchfulness, he might have seen him in time to have averted the danger, the defendant was liable for the injury that resulted from the accident. It was certainly the duty of the engineer to keep a constant and careful lookout for stock which might be upon the track." *Railway Co.* v. *Finley*, 37 Ark. 562-570.

In a later case the court said:

"Railway companies are not insurers of the lives and safety of all the domestic animals in the country through which their lines run. Ordinary care in the management of their trains is the measure of vigilance which the law exacts of them in their relations to the owners of such animals; and this means practically that the company's servants are to use all reasonable efforts to avoid harming the animal after it is discovered, or might, by proper watchfulness, have been discovered, to be on or near the track." *Railway* v. *Holland*, 40 Ark. 336.

It is a matter of common knowledge that the Indian Territory is a grazing country, where cattle in great numbers run at large. In the Indian Territory the owners of cattle are not bound to fence them up,

and the railroad company is not bound to fence them out. A railroad operated in a country where these conditions obtain, without exercising reasonable care to prevent injury to stock, would become an intolerable engine of destruction to animal life. The railroad company knows that animals are liable to be found upon its track at any place and at all times of day, and that, unless reasonable care is exercised to discover them, and the same degree of care used to prevent injury to them after they are discovered, they will probably be injured or killed by the powerful engines it runs upon its road. Under these conditions it cannot be maintained that the company is not bound to use any care to discover cattle on its track. We cannot yield our assent to the doctrine that an engineer who refuses to look, or is blind or near-sighted, may run his engine over and kill domestic animals *ad libitum*, and without imposing any liability on his company therefor, because he did not see them. It is the duty of the company, under the conditions which exist in this territory, to exercise ordinary care and watchfulness to discover domestic animals upon its track, and, when they are discovered, to use reasonable efforts to avoid harming them. And this is its duty independently of any higher duty it may owe to others. There is no relation between the duty it owes to its passengers and the duty it owes to the owners of stock on its track, and the duty it owes to the former cannot be made the measure of its duty to the latter, either directly or by circumlocution.

The form of the instruction is objectionable. It is framed on the erroneous supposition that the railway company is not required to use ordinary care and watchfulness to discover cattle on the track, but, in reality, it imposes this duty by indirection, by telling the jury that the company owes a duty to "others * * * to preserve a strict lookout while running" its trains, and that, as it is "presumed to keep such lookout, it is a fair inference of fact for the jury that a watchful agent will see stock on or near the track." But as the measure of the duty the company owed to others, as defined in the instruction, was no greater than the duty it owed the plaintiff in the particular case, it was not erroneous, but only a roundabout way of stating the law.

The other instruction, the exception to which is insisted upon in argument, was to the effect that, if the defendant agreed to fence its track though the plaintiff's pasture, and did not do so, and the cattle strayed on the track and were killed by the defendant's engines or trains by reason of the neglect of the defendant to fence its road, then the killing of the cattle was negligence on the part of the defendant. If the law had imposed on the defendant the duty to fence its road, and it had not done so, and the cattle had strayed upon the track and been killed as a result of the negligence of the company to perform its legal duty in this regard, it would have been liable for the cattle killed, without reference to the question of negligence in the operation of its trains. And when a railroad company enters into a contract with a land-owner to fence its track through his premises for the protection of his stock, such a contract is as obligatory on the railroad company as a statute

requiring it to fence its track; and, so far as relates to the question of the liability of the railroad company for stock killed by reason of its breach of such duty, it is precisely what it is when the obligation to fence is imposed by statute. The court told the jury that if they found the defendant had made such a contract, and that the cattle were killed by the defendant as the result of its breach of that duty, then the killing of the animals was negligence. It might have told them that in such case the defendant was liable for the cattle killed without reference to the question of negligence in the management and operation of its engines or trains which did the killing.

There was no objection to the admission of the evidence to prove this alleged contract. The only question was its sufficiency, and that was properly left to the jury. Whether it was sufficient to warrant a verdict on this issue for the plaintiff this court cannot say, because the "substance" only of the testimony is embraced in the bill of exceptions, and we would not be willing to disturb the verdict of the jury, or hold that there was not sufficient evidence to support any given issue in a cause, upon the statement contained in the bill of exceptions in this case,— that the witnesses testified in "substance" to what is therein stated. The opinion of the jury and of this court might differ widely from that of the parties or the court below as to what was the "substance" of the witnesses' testimony. The parties and the court may and should omit from the bill of exceptions all irrelevant and redundant matter; and the testimony of witnesses may be stated in a narrative form when it was delivered in answer to questions; but what is sent up as the evidence in the case must be certified to be all the evidence, and not the "substance" of it, before this court can be asked to pass on the question of its sufficiency to support the verdict. As the case must go back for a new trial, we deem it proper to say that if the plaintiff relies, as a ground of recovery, upon the fact that the cattle were killed by reason of the neglect of the defendant to fence its track according to its contract, we think that under the Code in force in the territory that fact should be stated in the complaint. He may, of course, allege as grounds of recovery both negligence in the management and operation of the defendant's trains and its neglect to fence its track according to its contract, as a result of which the cattle were killed, and as many other grounds of recovery as he may have. If an objection had been interposed to the introduction of testimony on this point it must have been sustained, unless the plaintiff had amended his complaint.

It is assigned for error that the court refused to give certain instructions to the jury asked by the defendant. The first, fourth, sixth, and seventh prayers of the defendant were embraced in the charge in chief, and the court did right in not incumbering the record and confusing the jury by repeating them. By the second, third, and fifth prayers the court was asked to charge the jury as follows:

"The court instructs the jury that the engineers and servants in charge of defendant's railway trains are not bound to keep a lookout for stock upon or near the defendant's railway track, and that the extent of the duties which a

railroad company owes to the owner of stock upon its track and right of way is that the engineer in charge of the train shall use ordinary or reasonable care, after the stock is discovered by such engineer, to prevent injury to such stock."

We have seen that this is not a full and accurate expression of the law on this subject.

The eighth prayer asked the court to charge the jury as follows:

"The court instructs the jury that the stock of the plaintiff in this case, mentioned in plaintiff's complaint, were in the Indian Territory in violation of law, and the defendant is not liable to plaintiff for any of such cattle as were killed by defendant's engineers and trains only because of gross negligence on the part of the defendant's servants in killing such stock."

Whether the cattle were in the Indian Territory in violation of law was a mixed question of law and fact; and, if its consideration was deemed material to the case, its determination should have been left to the jury, under proper instructions as to the law. But if the cattle were in the territory in violation of law, that was no concern of the defendant, and gives it no right to exercise any less care to prevent injury to them than it was bound to exercise to prevent injury to cattle rightfully in the territory.

The judgment is reversed, and the cause remanded, with directions to grant a new trial.