HARRIS *et al.* v. MISSSOURI, K. & T. RY. CO.

No. 75.   Opinion · Filed July 13, 1909.

(103 Pac. 758.)

1.   **TRIAL—Motion to Direct Verdict.** The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled.

2.   **NEGLIGENCE—Question for Jury.** In cases involving the question of negligence, the rule is now settled that, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of ·law for the court.

3.   **RAILROADS—Injuries to Animals on Track—Duty of Trainmen.** It is not enough for the engineer and fireman in charge of a railway locomotive and train to use diligence merely in driving animals away that are discovered upon the track; they should keep a vigilant lookout, and exercise ordinary diligence to frighten away animals that may be discovered approaching, or in dangerous proximity to the track, by sounding the whistle, ringing the bell, and using the means provided for that purpose.

(Syllabus ·by the Court.)

*Error from District Court, Wagoner County; John H. King, Judge.*

Action by William H. Harris and another against the Missouri, Kansas & Texas Railway Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

*Herbert F. Blair,* for plaintiffs in error, citing: Wharton on Negligence, sec. 1 *et seq.; Flynn v. Railroad Co.* (Mass.) 47 N. E. 1012; *Railroad Co. v. Gedney,* 44 Kan. 329; *Railroad Co. v. Wilson,* 28 Kan. 641; *Fritz v. Railroad Co.,* 22 Minn. 404; *Blankenship v. Railway Co.* (W. Va.) 27 S. E. 355; *Railroad Co. v. Irwin* (Ga.) 25 S. E. 851; *Kent v. Railway Co.,* 67 Miss. 608; *Railroad Co. v. Watson* (Ala.) 8 South. 793; *East Tenn., etc., R. Co. v. Watson* (Ala.) 7 South. 813; *Orcutl v. Railway Co.,* 85 Cal. 291.

*Clifford L. Jackson, W. R. Allen,* and *Leon B. Fant,* for defendant in error, citing: *Railway Co. v. Webb,* 6 Ind. T. 280; *Railroad Co. v. Zachary,* 2 Ind. T. 536; *Railroad Co. v. Huggins,* 4 Ind. T. 199; *Railway Co. v. McCoy* (Ind. T.) 104 S. W. 620; *Plaster v. Railroad Co.,* 35 Iowa, 499; *Flattes v. Railway Co.,* 35 Iowa, 191; *Wallace v. Railway Co.,* 74 Mo. 594; *Kennedy v. Railway Co.* (Neb.) 114 N. W. 165; *Railway Co. v. Wright* (Miss.) 28 South. 806; Elliott on Railroads (2d. Ed.) vol. 3, sec. 1206; *Railway Co. v. Phipps* (Neb.) 67 N. W. 441; *Railway Co. v. Langham* (Tex. Civ. App.) 95 S. W. 686; *Railway Co. v. Stacy* (Miss.) 35 South. 137; *Keilbach v. Railway Co.* (S. Dak.) 78 N. W. 951.

DUNN, J. On April 7, 1906, plaintiffs in error, who were plaintiffs below, filed their complaint in the United States Court for the Western District of the Indian Territory at Wagoner, wherein they alleged that on the 2d day of February, 1906, the defendant, its agents, servants, and employees, while running a freight train south over the track of its road into and through the town of Gibson Station, negligently failed to ring the bell or blow the whistle of its engine, or to slow the train down while passing through said town, carelessly and negligently collided with a mule belonging to plaintiffs, which mule had strayed on the track of defendant's railway, and this without any negligence of plaintiffs, thereby crippling the said mule, which its agents subsequently killed, and prayed for judgment for its value. To this complaint the defendant filed an answer, denying the averments of plaintiffs' complaint, and denying any liability under and by virtue of the things set forth therein. The trial of the cause was

had on January 31, 1908, in the district court of Wagoner ·county, to a jury. On the conclusion of the evidence offered by the respective parties the court on motion directed the jury to return a verdict for the defendant, which was accordingly done. From the judgment rendered thereon dismissing plaintiff's action the cause was appealed to this court by proceedings in error.

Counsel for plaintiffs take the position in this court that the trial court erred in not submitting the cause to the jury for its determination, contending that the evidence of negligence on the part of the servants and agents of the company as shown by the record was on the question of negligence sufficient to take the case to the jury. The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled. *Baker v. Nichols & Shephard Co.,* 10 Okla. 685, 65 Pac. 100; 6 Encyclopedia of Pleadings & Practice, p. 693; *Cooper v. Flesner et al., ante,* p. 47, 103 Pac. 1016. The foregoing states the rule generally applicable, and is the one adopted by this court. With it, then, for a test we will examine the evidence.

The record shows that the line of the defendant company's railway runs through Gibson Station on a straight and practically level track; that near this station, and on the west of said track, there is ·an old box car set down on the ground used for a toolhouse. The evidence further shows that on the evening of this accident the mule of plaintiffs had escaped from its inclosure, and

was grazing along near the main line track, and south of the tool-house and near to it, and about 20 feet from the main line track. The train approached from the north at a rate of speed of from 25 to 30 miles per hour, and the testimony is conflicting on the question of whether or not a whistle was sounded, the bell rung, or any other sounds of warning given as the train approached this point. In reference to the accident the plaintiffs offered the evidence of the fireman, which was taken by defendant by deposition and was then on file. He testified that the engineer first saw the mule about 25 or 30 car lengths from the engine; that it was standing on the passing track when first discovered, eating and grazing, and remained there until the train got in about two car lengths from it, when it stepped over on the main line in front of the engine, and was knocked off by the engine. A witness of plaintiffs testified that the point from where the mule started to the track was about 20 feet distant and that the train was about 100 feet distant when the mule started to cross, and that when the mule got on the track, the train was 50 feet from it, and that it made two jumps on the track, amounting to about 20 feet before the train hit it. That the mule was 6 or 8 feet south of the toolhouse, grazing; that the toolhouse was between the train and the mule. It further appeared from the testimony that there was another mule near the place of accident, some of the testimony putting it on the same side of the track with the mule that was killed, other evidence to the effect that the track ran between the animals. It also appeared that the depot was on the east side of the track, and that the mules were south of this building, but that the same was not between them and the train, so that they could not be seen. The engineer testified that he was about 100 feet from the mule when he first discovered it; that his train was a freight train of 48 cars, and the brakes were in good condition; that the track was straight and just about level, running through clear land; that the reason he did not notice the mule was because it was behind the toolhouse; that the train was running at a rate of between 25 and 30 miles per hour, and that the signals

which he gave were opening the cylinder cocks, ringing the bell, and sounding the whistle, but that no effort was made to stop the train; that the signals were given about 50 feet from the point of the accident; that he could not have safely stopped the train and avoided the accident; that the mule was not on the track when he first saw it. It was also shown by a witness that a party standing south of the toolhouse, looking north in the direction from which the train came, could see up the track a quarter of a mile; that the mule was about 30 yards from the toolhouse to the point where it was struck. As we have seen, the theory of counsel for plaintiffs is that the mule was not obstructed from view of the engineer by the toolhouse, the fireman testifying that the engineer saw it about 25 or 30 car lengths from the engine, and that this theory is supported by the condition of the track, it being clear and level; that when, in accordance with the testimony of the engineer, the train did not slacken its speed, and in accordance with other evidence offered by plaintiffs no signals were sounded, there then arose a condition upon which a jury could reasonably conclude that the engineer of the defendant company was negligent in neither slacking the train nor giving any signals to frighten the animal from the track. As we have observed above, only that evidence will be considered in determining the question of whether or not a cause shall be submitted or withdrawn from the consideration of the jury which is favorable to the contentions of the party against whom the action is contemplated being taken. We neither pass upon the weight of the evidence, nor upon its preponderance, nor do we say what it proves. These are things solely within the province of a jury.

As was said by Circuit Judge Caldwell, in the case of *Gulf, etc., Railway v. Ellis,* 54 Fed. 481, 4 C. C. A. 454, in discussing this question, where it arose in a case in which the court refused to give a peremptory instruction to the jury to find a verdict for the defendant:

"If there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presump-

tion is in its favor, and all doubts must be resolved in its favor. This court will not weigh or balance the evidence. And in cases like the one at bar, which turn on the question whether the party exercised ordinary care or was guilty of negligence, after the usual and appropriate definitions of those terms by the court, it is in the province of the jury to say, from a consideration of the evidence, whether in the particular case ordinary care was exercised, or whether there was negligence. In other words, what is ordinary care, or what is negligence, in the particular case, is a question of fact for the jury, and not of law for the court. *Railroad Co. v. Stout,* 17 Wall. 657, 663, 664, 21 L. Ed. 745; *Jones v. Railroad Co.,* 128 U. S. 443-445, 9 Sup. Ct. 118, 32 L. Ed. 478; *Railway Co. v. Ives.* 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; *Railroad Co. v. Foley,* 53 Fed. 459, 3 C. C. A. 589; Pol. Torts, 386 *et seq.* But, in the trial of every case before a jury, there comes a time when it may be the duty of the court to decide, as a matter of law, whether there is sufficient evidence for the jury to found a verdict upon. If there is not, the practice in the federal courts is to instruct the jury to return a verdict for the defendant. *Railway Co. v. Converse,* 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213. But the case should not be withdrawn from the jury unless the conclusion follows, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. *Railway Co. v. Cox,* 145 U. S. 593, 606, 12 Sup. Ct. 905, 36 L. Ed. 829. And in cases involving the question of negligence, the rule is now settled that, 'when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the court.' *Railway Co. v. Ives, supra"*

Counsel for defendant take the position in their brief that the animal was a trespasser, and the railway company owed no duty to it, except to use such efforts to keep from injuring it as a reasonably prudent person would use, after its danger was discovered, and that this duty would not begin until the animal started towards the track; that it did not exist while the mule was grazing upon the right of way. In this position we believe counsel are in error. Some of the cases referred to by counsel for both

parties in their briefs from the United States Court of Appeals of the Indian Territory would appear to go to the extent of supporting this claim, but the Circuit Court of Appeals of the Eighth Circuit, which was the court of last resort in such a case as this for that jurisdiction, has reversed a number of cases decided by the United States Court of Appeals of the Indian Territory, in which the question of law involved in stock-killing cases by railroads was before it. This holding would be controlling here. *Gulf, etc., Railroad Co. v. Ellis, supra; Gulf, C. & S. F. R. Co. v. Johnson,* 54 Fed. 474, 4 C. C. A. 447; *Gulf, C. & S. F. R. Co. v. Washington,* 49 Fed. 347, 1 C. C. A. 286; *Eddy et al. v. Evans,* 58 Fed. 151, 7 C. C. A. 129.

In the case of *Eddy et al. v. Evans, supra,* Judge Caldwell in his opinion stated the law on the facts involved therein as follows:

"It was the duty of the engineer to keep a careful lookout for stock on the track, and, when it was discovered, to use all reasonable means to avoid injuring it. The engineer testifies that the horses were run into about midnight; that his engine was 50 feet from the first horse when he saw it, and the testimony of other witnesses tends to show that the second horse was 65 yards further from the engine than the first; that being the distance between their dead bodies as they lay by the side of the track, where they were killed. The engineer testifies he applied the air brake, but he did not blow the whistle, and he gives no reason or excuse for not doing so. It was the duty of the engineer to sound the whistle as well as to apply the brake; and the jury might well infer that, if the proper alarm signals had been sounded when the horses were first discovered, or ought to have been discovered, the horse furthest from the engine could and would have got off the track. Whether the jury were justified in drawing the same inference as to the first horse we need not inquire, for the reason that the instruction asked applied to both horses, and it was not error to refuse it, if the case, as to either horse, should not have been taken from the jury. We have repeatedly decided that the owners of stock in the Indian Territory have a right to let them run at large, and that, when stock stray upon the railroad track, they are not trespassing."

The court in the syllabus held:

"The failure of a locomotive engineer to blow the whistle on discovering stock upon the track, about 80 yards ahead, is sufficient to warrant a jury in finding negligence, although it appears that the air brakes were immediately applied."

In the case of *Gulf, etc., Railroad Co.* v. *Washington, supra,* the court was requested by the railway company to instruct the jury as follows:

"The court instructs the jury that the engineers and servants in charge of defendant's railway trains are not bound to keep a lookout for the stock upon or near the defendant's railway track, and that the extent of the dutiees which a railroad company owes to the owner of stock upon its track and right of way is that the engineer in charge of the train shall use ordinary or reasonable care, after the stock is discovered by such engineer, to prevent injury to such stock."

In discussing the law relating to the duties which the railway companies owe in cases within the scope of the instruction requested, the court said:

"It is a matter of common knowledge that the Indian Territory is a grazing country, where cattle in great numbers run at large. In the Indian Territory the owners of cattle are not bound to fence them up, and the railroad company is not bound to fence them out. A railroad operated in a country where these conditions obtain, without exercising reasonable care to prevent injury to stock, would become an intolerable engine of destruction to animal life. The railroad company knows that animals are liable to be found upon its track at any place and at all times of day, and that unless reasonable care is exercised to discover them, and the same degree of care used to prevent injury to them after they are discovered, they will probably be injured or killed by the powerful engines it runs upon its road. Under these conditions it cannot be maintained that the company is not bound to use any care to discover cattle on its track. We cannot yield our assent to the doctrine that an engineer who refuses to look, or is blind or nearsighted, may run his engine over and kill domestic animals *ad libitum,* and without imposing any liability on his company, there for because he did not see them. It is duty of the company, under the conditions which exist in this territory, to exercise ordinary care and watchfulness to discover domestic animals upon its

track, and, when they are discovered, to use reasonable efforts to avoid harming them."

The doctrine announced in the above cases was the law ·obtaining in the Indian Territory at the time this animal was killed. The rule is neither exceptional nor novel. Some states have required by statute a duty on the part of train operators to keep a lookout for stock on, or in close proximity to, the track, but independent of the statute, it is a common-law duty that a person shall so use his property as not to unnecessarily endanger or injure another.

The Supreme Court of Alabama, speaking of the duty resting upon engineers toward animals on or near the track, in the case of *Kansas City, Memphis & Birmingham R. Co. v. Watson,* 91 Ala. 483, 8 South 793, said:

"There exists a common-law duty when an animal is discovered in close proximity to the track, under circumstances indicating danger. In such case it becomes the duty of the engineer to use the usual and proper means to frighten it away, and, failing in this, to check the speed of the train, so as to bring it under control, in order to avoid injury. Also, when the animal is not discovered because of his negligence in not keeping a proper lookout, and injury results therefrom, the company is liable as if the animal had been in fact discovered. These principles have been repeatedly and uniformly announced by this court. *E. T. V. & G. R. R. Co. v. Bayliss,* 75 Ala. 466; s. c., 77 Ala. 429, 54 Am. Rep. 69; *S. & N. Ala. R. R. Co. v. Jones,* 56 Ala. 507."

The Supreme Court of Kansas, in the case of *Missouri Pacific Railway Company v. Gedney,* 44 Kan. 329, 24 Pac. 464, 21 Am St. Rep. 286, likewise had occasion to pass on facts similar to those in the case at bar. The company was sued by Gedney, for the value of a cow which was killed by being struck by the engine of the company. The animal, along with several others, was grazing on the highway near to the crossing of the railroad. Some were on one side of the track and some on another. Defendant's freight train, traveling at a rate of 15 miles an hour, passed along the road and over the crossing. Shortly before the train reached the crossing the cow stepped upon the track and was struck and

killed. The principal question tried was whether those in charge of the train exercised due care under the circumstances to avert the injury. The jury found they did not. The court, in discussing the facts of the case, which were very similar to the ones in the case at bar, said:

"It is found that they failed to keep a vigilant lookout for stock or obstructions on the track, and failed to sound the whistle or ring the bell when approaching the crossing, and failed to do that which was necessary in order to avoid a collision. We think there is sufficient evidence in the record to support the findings and verdict. It is true the jury found that the engineer did not discover the cow going upon the track until the engine was within 20 feet of her, and that the train was then going at the rate of 15 miles an hour, and could not have been stopped after the cow came upon the track, and before she was struck. It is also true that the engineer and fireman testify that they were vigilant in looking out along the line of the road to see if there were any objects ahead, or animals dangerously proximate to the track, and, further, that they sounded the whistle as they approached the crossing, and as soon as they saw the cow that they reversed the engine and endeavored to stop the train. The testimony of Gedney, however, is to the effect that the whistle was not sounded, nor any danger signal given, 80 rods from the crossing, nor at any time afterward before the cow was struck. There is also testimony that the ground was level near the crossing, and that there were no obstructions to prevent the engineer and fireman from seeing the cattle on the side of the track for a distance of half a mile or more, and that, although the cattle were in plain view and approaching the track, no alarm was given to drive them away from the track. If the engineer and fireman were at their posts, and kept a lookout for obstructions, and an animal not seen by them came suddenly upon the track when there was not sufficient time or opportunity to frighten her away, or where they could not by ordinary diligence avoid a collision, the company would not be liable. It is not enough, however, that they used diligence to avert the injury after they saw the cow upon the track. It was their duty to keep a lookout for objects or animals approaching or in dangerous proximity to the track, and, if the circumstances indicated that there was danger they would get upon the track, to use the means which they possessed for driving them away."

In that case, like the one at bar, there was a dispute as to whether or not signals were given. Upon this the Supreme Court of Kansas held as do we:

"The conflict of testimony as to the care and diligence used by the engineer and fireman in respect to keeping an outlook and in sounding an alarm, the topography of the ground near the crossing, and the proximity of the animals to the track, has been settled by the jury, and under well-worn precedents their finding and verdict upon such testimony must be held conclusive."

We submit that under these authorities, which to our minds correctly state the rule pertaining to this class of cases, while the question presented by the record is a close one, yet it is one upon which the minds of reasonable men might come to different conclusions, and this being true, the rule adopted by this court in the case of *Missouri, Kansas & Texas Railway Company v. Shepherd,* 20, Okla. 626, 95 Pac. 243, is applicable. The statement is as follows:

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the court."

The judgment of the trial court is accordingly reversed, and the cause remanded for a new trial.

All the Justices concur.