**FIRST NAT. BANK OF ARDMORE et al. v. SPIERS et al.**

No. 17754. Opinion Filed Jan. 31, 1928.

Rehearing Denied March 20, 1928.

(Syllabus.)

**1. Trial—Directing Verdict—Status of Evidence to Warrant.**

Paragraph 1 of the syllabus in Solts v. Southwestern Cotton Oil Co., 28 Okla. 706, 115 Pac. 776, is hereby adopted as paragraph 1 of the syllabus in this case.

**2. Same—Defendant's Motion for Directed Verdict Erroneously Sustained in Action on Note.**

The evidence examined and tested under the rule laid down in paragraph 1 above, and held that the same is reasonably sufficient to sustain a jury verdict if one were rendered for the plaintiff, and for that reason the trial court erred in sustaining defendant's motion for a directed verdict.

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by the First National Bank of Ardmore, insolvent, by H. D. McCollom, liquidating agent, against Edward Spiers and W. M. Bonner on their promissory note. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with directions.

H. C. Potterf, Earl Q. Gray, and J. M. Poindexter, for plaintiffs in error.

Cruce & Potter, Ledbetter & Ledbetter, and Edward Spiers, for defendants in error.

TEEHEE, C. On May 16, 1924, the First National Bank of Ardmore, insolvent, by its liquidating agent, H. D. McCollom, brought suit against Edward Spiers and W. N. Bonner on their promissory note by them executed and delivered to the bank. The status of the parties, as plaintiff and defendants, is the same here as in the trial court, and they will thus be hereinafter designated.

Plaintiff's petition was in the regular form in such cases with the note made a part thereof. The note was for $13,500, dated April 24, 1922, due 20 days after date with interest at 10 per cent. per annum from date, and provided an attorney's fee of $10 and 10 per cent. additional of the note. Judgment was prayed in accordance with the terms thereof.

Defendants answered by verified denial and plea of payment, which new matter by replication plaintiff traversed. The cause was tried to a jury. Defendants having admitted execution of the note, under the affirmative defense, assumed the burden and first presented their evidence. Upon their announcement of rest, plaintiff demurred to their evidence, which was by the court overruled. Plaintiff thereupon presented its evidence, and upon conclusion thereof, defendants demurred thereto and moved for a

directed verdict. The motion was by the court sustained, a directed verdict against the plaintiff rendered by the jury, with judgment thereon pronounced for the defendants, whereupon plaintiff brought the case here for review.

The single proposition presented is stated by plaintiff as follows:

"The trial court erred in sustaining the motion of defendants for a directed verdict, and thereby taking the cause from the jury and in rendering judgment in favor of the defendants and against the plaintiff."

As the record does not show any disposition of defendants' demurrer to plaintiff's evidence, that apparently was considered as merged in the motion for a directed verdict, since both are of equal dignity in their effect, and therefore no further reference to the demurrer is required. In our consideration of the proposition presented, our scope of inquiry into the matter is well defined. The rule is stated as follows:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the motion is leveled." Solts v. with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting and the court is asked to direct a verdict, all the facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the party against whom the motion is leveled." Solts v. Southwestern Cotton Oil Co., 28 Okla. 706, 115 Pac. 776; Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 20 Ann. Cas. 29, 23 L. R. A. (N. S.) 1180; Harris v. Missouri. K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858; Alva Roller Mills v. Simmons, 74 Okla. 314, 185 Pac. 76; 26 R. C. L. 1075, paragraph 81.

Guided by this rule, therefore, the evidence shows that early in March, 1922, Don Lacy and Ed Sandlin were president and cashier, respectively, of the First National Bank of Ardmore. Lacy continued in that capacity until August 30, 1922, and Sandlin until insolvency of the bank in December, 1923. About the 1st of March, 1922, there was a transaction between Lacy and J. S. Mullen which caused Sandlin to doubt the correctness of the bank's credit with the Fort Worth State Bank of Fort Worth, Texas. The books of the First National Bank showed a credit of $53,500 with the Fort Worth Bank. A few days thereafter Sandlin in person made an investigation of the account at Fort Worth, and learned that the books of that bank showed a credit of $10,000, thus disclosing a discrepancy of $43,500 in the account. On his return to Ardmore he was met by Mullen. In the conference that immediately followed, Sandlin charged the discrepancy to Lacy and Mullen and informed Mullen that the same had to be covered at once, as Sandlin would not make a false report to the Comptroller of the Currency, which was due within three days' time in which to cover the shortage. Asked how he planned to do this, Mullen said he would get the money from the defendant Bonner at Oklahoma City. The next day Mullen informed Sandlin at the bank that he had secured the money from Bonner. During the day Bonner called Sandlin by telephone and told him that he would make the deposit with the Fort Worth bank, and requested Sandlin to send him a deposit slip on the First National Bank therefor. Sandlin informed Bonner that he could not do that, as that arrangement would not remedy the situation. It was agreed then that the deposit slip would be issued as a receipt of the money with the understanding that no credit to Bonner of the amount would be entered on the books of the First National Bank, and the slip was issued accordingly. The deposit as made with the Fort Worth bank was $46,000, on March 18, 1922. The deposit slip by Sandlin was made out for $43,500, and the amount so entered on the books of the bank as a credit with the Fort Worth bank. This was later corrected to show the deposit of $46,000, as made by Bonner, and the excess of $2,500, credited to Bonner's account on the books of the First National Bank. About 30 days thereafter Bonner called Sandlin and advised him that he would draw on the First National bank for $13,500 of the money thus deposited. Sandlin informed Bonner that he had no such account with the First National Bank, and repeated the understanding had at the time of the original transaction, that the money was deposited to cover the shortage created by Mullen and Lacy. Bonner thereupon asked if Sandlin would loan him the amount requested, and being informed that he was then being carried on notes to the loan limit of the bank, Bonner suggested that he would have the defendant Spiers, who was his attorney, sign the note, and he, Bonner, would indorse the same, to which Sandlin agreed, and the

was accordingly executed and delivered by Bonner to the bank, and the amount credited to Bonner's account.

Following the note transaction of $13,500, Sandlin, being skeptical of Bonner's action, spoke to Bonner as to whether Mullen had paid him the money deposited by Bonner at Fort Worth, to which he replied that he knew where he would get the money, and that he was protected by collateral.

In July, 1922, Bonner drew on the First National Bank for $30,000, through the Fidelity National Bank of Oklahoma City, which was paid in due course through the First National Bank, the same being paid by Lacy and charged to a trust account carried by Lacy.

The note being past due for several months, Sandlin, in September, 1922, called by telephone for Bonner at Oklahoma City. Finding Bonner absent he called Spiers and asked an adjustment of the paper. Spiers communicated with Bonner in Wyoming, who asked that Spiers request Sandlin to charge the note to Bonner's account. Sandlin replied that written authority was required. This was secured and forwarded to Sandlin. Bonner not having such account, the note was not thus charged. Nothing further was done in the matter till a few months preceding the insolvency of the bank, when adjustment was again urged by Sandlin. No adjustment having been made, the note passed into the hands of the receiver of the bank, and in due course this suit was brought upon the note.

These salient points of the evidence, with the reasonable inferences and conclusions drawn from their details, when tested by the rule above announced, appear to be reasonably sufficient to sustain a jury verdict for the plaintiff were one so rendered thereon. In this state of the record. therefore, it is evident that the trial court erred in sustaining defendant's motion for a directed verdict. In reaching this conclusion there is, of course, no opinion expressed upon the weight or credibility of the evidence involved, as we are plainly required to proceed upon a full faith and credit theory thereof.

The judgment of the district court is accordingly reversed, and the case remanded for a new trial.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court, it is so ordered.

HEFNER, J., disqualified and not participating.