HAMMOND v. THE C. & N. W. R. Co.

1. **Railroads:** CONSTRUCTION OF STATUTE: STOCK.   The words "running at large," as used in the statute, imply that the stock they are used to describe is not under the control of the owner.

2. ———: NEGLIGENCE: FENCE.   In an action against a railway company for damages for the killing of stock, wherein it was alleged that a gate was not provided with proper fastenings, it was *held*, that the jury should have been allowed to consider whether or not the defendant was guilty of negligence in the construction of the gate.

3. ———: ———: ———.   The company would not be released from liability by ignorance of a defect in the gate, if in the exercise of reasonable care it would have acquired knowledge of it.

4. ———: ———: LIABILITY.   The railway company's liability growing out of the defective construction of the gate would not be discharged or affected by proof that plaintiff's tenant was in the habit of leaving the gate open, nor even that plaintiff himself was in the habit of doing so.

5. ——: ——: PRESUMPTION OF KNOWLEDGE.   A defect in the orig-
inal construction of the gate would be presumed to be known to defend-
ant, and plaintiff would not be required to notify defendant of its exist-
ence nor to repair it even though it could be done at small expense.

6. ——: ADJACENT LAND OWNER.   While the owner of adjacent realty
might be held responsible for the closing of a gate, constructed for his con-
venience and at his request, he would nevertheless be charged with such
responsibility only when it was so constructed that it would remain closed
if so left by him.

### *Appeal from Marshall District Court.*

MONDAY, APRIL 24.

THE plaintiff recovered for a mule alleged to have been
killed on the defendant's track, by reason of the same not
being properly fenced.   The negligence, if any, consisted in
not providing proper fastenings to a gate.   The answer denies
all negligence, and avers that the plaintiff was negligent in
not keeping the gate closed.

The railroad runs through the plaintiff's farm, cutting off
about one acre from the south corner.   On this acre is a ten-
ant house.   The plaintiff lived about forty rods north of the
railroad.   The railroad is fenced and between the plaintiff's
house and the tenant house is a private crossing, with gates
for plaintiff's use, one of them being the gate in question
through which the mule strayed upon the track.   The plain-
tiff put in fastenings to the gate the summer before the mule
was killed, by driving two pins into the ground to hold the
gate shut, which pins were broken off after the ground froze.
The plaintiff never notified the defendant, or its servants, that
the fastenings were broken off.   Sometimes in the winter the
wind blew the gate open, which the plaintiff knew and the
defendant did not know, so far as the evidence shows.   The
gate was in constant use by the plaintiff and his tenant.   The
plaintiff's mule that was injured had been tied in the stable,
and on the afternoon of the day on which it was injured
escaped.   Plaintiff's hired man tried to catch the mule just
after she broke loose, but could not.   Plaintiff's tenant went
through the gate that evening a short time before the mule

was hurt. He saw the mule out in the adjoining lot and the gate was half-way open, and he did not shut it. The mule, while on the track that evening, was run over by defendant's train. Verdict for plaintiff. Defendant appeals.

*E. C. Rice* and *N. M. Hubbard*, for appellant.

The animal killed was not running at large within the meaning of the statute. (*Smith v. R. R. Co.*, 28 Iowa, 49.) The proof must conform to the allegations. (*McKee v. R. R. Co.*, 43 Ill., 119.) The gate having been erected for plaintiff's use, it was his duty to keep it closed, and if left open by his agents or servants, he cannot recover for injuries or loss caused thereby. (*Russell v. Hanley*, 20 Iowa, 221.) If left open by a third person it must be shown that defendant had notice and failed to close it, or that a sufficient time had elapsed to afford a reasonable presumption that it had notice. (*Aylesworth v. R. R. Co.*, 30 Iowa, 461.) If gates at a private crossing are open, the presumption is that the person for whom they were constructed left them open. (*Eames v. R. R. Co.*, 14 Allen, 153; *Waldron v. R. R. Co.*, 35 Me., 422; *Adkins v. R. R. Co.*, 23 Ind., 341; *McKee v. R. R. Co.*, 43 Ill., 119.)

*Caswell & Meeker, Henderson & Norton*, and *J. A. Henderson*, for appellee.

The defendant has the burden to show that the gate, if properly constructed, would not have been shut and prevented the accident. (*Spence v. The C. & N. W. R. Co.*, 25 Iowa, 142.) The animal killed was running at large within the meaning of the statute. (*Smith v. C. R. I. & P. R. Co.*, 34 Iowa, 96.) Cattle, if found upon the uninclosed lands of another, or lands not inclosed as required by statute, are not trespassers. (*Russell v. Hanley*, 20 Iowa, 222.) The law of 1862 contemplates a fence adequate to keep stock from the railroad track. (*Fernon v. The D. & S. W. R. Co.*, 22 Iowa, 530.) A railway company is absolutely liable for stock killed on its road if it is not fenced. (*Davis v. The B. & M. R. R. Co.*, 26 Iowa, 551; *Swift v. The N. M. R. Co*, 29 Id., 244; *Fritz v. The M. & St. P. R. Co.*, 35 Id., 338.)

ADAMS, J.—I. It is contended by the appellant that the mule was not *running at large*, within the meaning of those words as used in the statute, but it was held in *Hinman v. The Chicago, R. I. & P. R. R. Co.,* 28 Iowa, 494, that the words running at large import that the stock is not under the control of the owner. The mule in this case escaped. The plaintiff's hired man tried to catch it, and was unable to do so. It was, we think, running at large within the meaning of the statute.

1. RAILROADS: construction of statute: stock.

II. The defendant asked the following instruction, which was refused: "If you find from the evidence that, if the gate in question had been closed in the condition it then was, it would then have prevented the accident, you will find for the defendant." Inasmuch as the defendant did not provide fastenings to the gate, and the wind sometimes blew it open, it would have been improper to exclude from the jury, as the instruction was calculated to do, the consideration of the question as to whether the defendant was guilty of negligence in not so constructing the gate, either with fastenings or otherwise, that the wind would not blow it open.

2. ——: negligence: fence.

III. The fifth instruction asked by the defendant, and refused by the court, enunciates the principle that the defendant would not be liable unless the gate was out of repair and the defendant knew it. The company might be liable without knowledge of the defect, if in the exercise of reasonable care such knowledge would have been acquired.

3 ——: ——.

IV. The sixth instruction asked by the defendant, and refused by the court, is as follows: "If you find from the evidence that the plaintiff owned the land on both sides of the track at the point where said mule came upon it, and that a man in the plaintiff's employ resided across the track from plaintiff's main farm and house, and said man or his family were in the habit of crossing over for water, work, etc., and of leaving said gate open, or not closing it when found open, you will find for the defendant, unless you find that the defendant or its employes left the same open

4. ——: ——: liability.

and thereby the accident happened." In this matter of the alleged negligence of the company there were three questions for the jury to consider:

1. Had the company exercised reasonable care in the construction of the gate?

2. If not, was it open at this time by reason of its not being properly constructed?

3. If it was, did the mule stray through it in going upon the track at the time it was injured?

If the plaintiff's tenant and his family were in the habit of passing through the gate and leaving it open, it was a proper fact for the jury to consider in determining whether the gate was or was not open at that time by reason of being defectively constructed. But the court would, we think, have intruded upon the province of the jury if it had told them that they would be precluded from finding that the gate was open by reason of a defective construction, if they should find the habit of the tenant and his family to be such as the instruction supposes.

V. The eighth instruction asked by the defendant and refused by the court enunciates the principle that if, at the time of the accident, there was no stock running in the adjacent lot, and the plaintiff and tenant lived on opposite sides of the track, and were in daily use of the gate, and left it open a good deal, the defendant would be relieved from any duty in closing it.

The petition, however, avers, and the evidence tends to show, that the gate was so constructed that the wind sometimes blew it open. If, at the time of the accident, the wind had blown the gate open, we cannot say that the defendant was relieved of the duty of closing it, merely because the plaintiff and his tenant were in the habit of using it and leaving it open.

VI. The defendant asked, and the court refused, an instruction which is in the following words: "If the gate 5. ——: ——: in question was out of repair and the plaintiff presumption of knowledge. knew it, it was his duty to repair it or notify the defendant of the fact, and if he failed to do so, he is guilty

of negligence." By this instruction it is meant, of course, that the plaintiff in the case supposed would be guilty of negligence in such sense that he could not recover. As to his duty to repair, we may observe that it has been held in cases of trespass where the injured party could repair at small expense, if he failed to repair, and a greater injury resulted therefrom, which might have been prevented by repairing, his damages would be only the cost of repairing. As where a person throws a stone through another's window and the owner does not repair the window, and his furniture is damaged by reason thereof, he can still recover only what it would have cost to repair the window. But that doctrine is not applicable in this case. The statute imposes an absolute liability upon the company if it fails to fence where it has a right to, and stock running at large is killed on the track by reason of a want of a fence. It is true that if the fence is once built by the company and becomes defective without the fault of the company, and an injury results therefrom, the company would not be liable if it had no knowledge of the defect, and would not have discovered it in the exercise of reasonable care. In this case, however, the evidence tended to show that the defendant never properly constructed the gate. If the gate was originally defective, we must presume that the defendant knew it. There was, therefore, no obligation resting on the plaintiff to notify the defendant of it.

VII. The appellant complains of the refusal of the court to give an instruction which is in these words: "A gate 6. ——: adjacent land owner. erected in the line of a railroad fence for the convenience of the owner of the land, and at his request, places the responsibility of keeping the gate closed (if provided by the company), upon the occupant of the realty, and if animals pass on the track at such gate the company would not be liable to the owner or occupant for killing such animals."

In *Eames v. Boston & Worcester R. R. Co.*, 14 Allen, 153, the question arose as to whether the responsibility of keeping certain bars closed, through which a cow had passed upon the track and was killed, rested upon the plaintiff or

defendant. The court said: "They (the railroad company) placed bars in the fence between their track and the plaintiff's lot for his accommodation. The bars were left down and the cow passed from the pasture through them upon the track. As no one but the plaintiff had occasion to use the bars, the reasonable presumption must be that they remain at any given time in the same condition in which he left them. The duty of closing them after using them reasonably devolves upon him."

This case is cited to us by the appellant as sustaining the doctrine of the foregoing instruction. But its inapplicability will be seen by considering that while bars will remain up or down as they are left, the evidence tends to show that the gate in question was so constructed that it would not remain always as it was left, but was sometimes blown open by the wind. The responsibility of closing such a gate, we cannot say, rests at all times upon the land owner, even though he might be responsible for the closing of bars which he alone used.

VIII. The seventeenth instruction asked by the defendant, and refused, is based upon the supposition that the mule was in the plaintiff's inclosure without right. But we do not understand that the instruction has any proper application to this case.

IX. The appellant excepts to the instructions given by the court. It is not necessary that we should consider them specifically. They raise no questions of law not already considered in this opinion.

X. The appellant contends that the verdict was contrary to the evidence. There is strong reason to believe that the gate was left open by the carelessness of the plaintiff or some other person upon the premises who was in the habit of using it. But we cannot say that the evidence was such that the court below should have set aside the verdict.

AFFIRMED.