WILLIAM H. TOWNE *vs.* NASHUA AND LOWELL RAILROAD.

Suffolk.    Nov. 14, 1877. — Feb. 8, 1878.    COLT & AMES, JJ., absent. LORD, J., did not sit.

In an action against a railroad corporation for the killing of the plaintiff's horse, there was evidence that the plaintiff owned a farm which extended on both sides of the railroad and of a highway, which at that point ran for a considerable distance nearly parallel with the railroad; that the plaintiff's pasture was on the north side, and his barn on the south side of the railroad; that the defendant had constructed a passageway across the railroad, with gates, which it was bound to maintain, on both sides of the track, for the use of the occupants of the farm; that the only access to the barn was through these gates; that, on the day of the accident, the plaintiff's servant went into the pasture for the purpose of bringing the horse and some oxen to the barn; that he left the gate of the pasture open, intending to catch and lead the horse and drive the oxen; that the horse ran by him, went out through the gate into the highway, passed along the highway to the passageway, into which he turned; that, by reason of the insufficiency of the gate on the northerly side of the track, he crossed the railroad and was stopped by the gate on the southerly side; that on the approach of a train he became frightened, ran up the railroad track some distance, when he was overtaken and killed by the train. The judge ruled that the horse, when he passed into the highway and while upon the railroad track, was a trespasser. *Held*, that this ruling was erroneous, and that it was a question of fact for the jury, whether the horse went upon the railroad through the negligence of the plaintiff's servant.

TORT for the killing of a horse on the Nashua and Wilton Railroad, by the defendant's locomotive engine, the railroad being leased and operated by the defendant. Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions in substance as follows :

It appeared that the plaintiff, at the time of the accident, was the owner of a farm in New Hampshire, lying on both sides of the railroad and of a highway ; that the plaintiff's barn was on the south side of and quite near the railroad track, and his house and pasture were on the north side of the track, and that the land between the highway and the railroad, and on both sides of the railroad at the crossing near the barn, was part of the plaintiff's farm ; that the defendant had constructed a passageway with gates across the railroad, for the use of the occupants of the farm, and that no other person had any right to use the same, and that the only access to that part of the farm lying south of the railroad was by the gates and passageway; that, on the day of the accident, the horse and a yoke of oxen were in the pasture, on the north side of the highway, and that a servant of the plaintiff, about four o'clock in the afternoon, went from the plaintiff's house down the highway to the gate of the pasture, for the purpose of bringing the horse and oxen to the barn, according to his usual custom ; that he left the gate of the pasture open, and went into the pasture ; that the horse and oxen were at some distance from each other; that he had a halter in his hand for the purpose of leading the horse, and intended to drive the oxen before him ; that, in going to catch the horse, it ran by him and went out through the gate into the highway ; that he did not immediately follow the horse, but drove the oxen toward the gate, and when he got near the gate he heard the train which afterwards killed the horse ; that he at once left the oxen and ran into and up the highway some rods, when he saw the horse standing in the passageway, over but beyond the railroad, with his head over the gate nearest the barn, and that the horse stood there until the train and smoke from the locomotive engine obstructed his view, and, as the train had then passed him, he stopped running and went back for the oxen.

It also appeared that the gates on both sides of the track were closed and secured in the usual way about ten o'clock that morning by the plaintiff's foreman.   The servant who went for the horse testified that he did not go to the barn that afternoon, did not open either gate, and did not know that either gate was open when he went to the pasture, until he saw the horse on the other side of the track, as the train passed by him.

There was further evidence that, on the near approach of the train, the horse turned and ran away from it up the railroad fifty-eight rods, when it was overtaken and killed by the train. The distance from the pasture gate along the highway to the passage-way, from which the horse entered upon the railroad, was fifty-four rods.

The plaintiff then offered evidence tending to show that the gate, through which the horse entered upon the railroad, was insufficient, defective and out of repair ; that it was one which the defendant was bound to erect and maintain in good repair ; that it had no fastening, and could only be kept closed by setting a board or other weight against it, and that, if the board fell down or was knocked down or blown down, the gate would swing open ; that the other gate could only be opened and shut by lifting and carrying it ; that the defendant's station-agent and road-master had been notified that the gates were out of repair, and had been requested to put them in proper repair.

The judge ruled, against the plaintiff's objection, that all evidence as to the obligation to erect and maintain the gates in repair, and as to the insufficient character and defective condition of the gates, and their want of repair, was incompetent and immaterial ; that when the horse left the pasture and passed into the highway, he became a trespasser, and was such when he was on the railroad, and when he ran up the track and was killed.

The defendant contended that the case was to be governed by the law of New Hampshire, and put in evidence the Gen. Sts. of N. H. *cc.* 147, 148. The judge so ruled, and ruled also that, if the case was to be governed by the law of Massachusetts, it would make no difference, for by the law of either state the defendant was not bound to the duty claimed by the plaintiff in the case of a trespasser. The judge also instructed the jury that the rule that the defendant was bound to exercise ordinary care and prudence in running its trains did not apply to the facts proved and offered in evidence in this case, and that the defendant was not liable unless the jury were satisfied that the horse was killed through the reckless carelessness or wanton misconduct of the defendant's servants.

The jury returned a verdict for the defendant ; and the plaintiff alleged exceptions.

*C. R. Train & J. O. Teele,* (*W. H. Towne* with them,) for the plaintiff.

*J. H. George* (of New Hampshire) & *H. E. Morse,* for the defendant, cited *Woolson* v. *Northern Railroad,* 19 N. H. 267; *Maynard* v. *Boston & Maine Railroad,* 115 Mass. 458; *McDonnell* v. *Pittsfield & North Adams Railroad,* 115 Mass. 564.

MORTON, J. The ruling of the Superior Court was based upon the assumption that the plaintiff's horse, at the time he was killed, was an estray trespassing upon the railroad. If this assumption was correct, the ruling was right. *Darling* v. *Boston & Albany Railroad,* 121 Mass. 118, and cases cited.

But we are of opinion that it was a question of fact for the jury to determine whether the horse went upon the railroad through the negligence of the plaintiff or his servants. The plaintiff's farm extended on both sides of the railroad and of the highway, which at this point ran for a considerable distance nearly parallel with the railroad, his pasture being on the north side and his barn on the south side. He had a private lane or passageway running from the highway across the railroad track to his barn. We must assume, for the purposes of this hearing, that it was the duty of the defendant to keep suitable gates across this lane on both sides of the railroad track. The plaintiff's servant went to bring the horse and some oxen from the pasture to the barn. He left the gate of the pasture open, intending to catch and lead the horse and drive the oxen. The horse ran out of the gate, traversed the highway about fifty rods, and turned into the lane; by reason of the insufficiency of the gate on the northerly side of the track, he crossed the railroad, and was stopped by the gate on the southerly side. While there, he was frightened by an approaching train, ran upon the track and was killed. After he left the highway and turned into the lane, he was lawfully upon the plaintiff's land, and this distinguishes the case from the cases cited by the defendant.

Upon these facts, it cannot be said, as matter of law, that the horse, when he went upon the railroad track, was an estray, unlawfully at large. The real question is, whether the servant of the plaintiff, in allowing the horse to go from the pasture to the barn unconfined, was guilty of negligence which contributed to the accident, and this is a question of fact for the jury. We

cannot hold, as matter of law, that it is negligence in a man to drive his horse from one part of his farm to another over a highway as this horse was driven. It might depend upon the nature of the place and the character of the horse.

If the jury, upon all the evidence, are satisfied that the plaintiff's servant was guilty of no negligence upon the occasion when the horse was killed, then the horse was not a trespasser; and the plaintiff may recover, if he proves that the injury was caused by the defendant's neglect of its duty to maintain the gate.

*Exceptions sustained.*