HENRY G. TAFT vs. NEW YORK, PROVIDENCE, AND BOSTON
RAILROAD COMPANY.

Worcester.    October 4, 1892. — October 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Railroad Accident — Animal — Barrier at Crossing of Private Way —
Evidence — Trespass — Negligence — Due Care.*

In an action against a railroad corporation for causing the death of the plaintiff's
horse, which escaped from his land adjoining the railroad, through an open
gate, which, together with a gate on the other side of the tracks, had been
erected at his private crossing by the corporation ten or twelve years previously,
evidence that bars had been used there formerly instead of gates is immaterial.

In an action against a railroad corporation for causing the death of the plaintiff's
horse, which escaped from his land adjoining the railroad through an open
gate which had been erected at his private crossing by the corporation, the
plaintiff having testified that the gate had been out of repair by being sagged
and difficult to shut, and allowed to remain open for several years, it was *held*
that the exclusion of the question, on cross-examination, whether he had ever
requested the defendant to repair the gate before the accident was within the
discretion of the court.

In an action against a railroad corporation for causing the death of the plaintiff's
horse, which escaped from his land adjoining the railroad through an open
gate which had been erected at his private crossing by the corporation, evidence
that the gate had remained open nearly all the time for about two years, that
the defendant's section-master had repeatedly passed through it without attempt-
ing to shut it, and that it was in such a condition that it could not be opened or
shut by a reasonable effort on the part of those having occasion to pass through
it, will warrant the jury in finding that the defendant neglected the duty imposed
upon it by the Pub. Sts. c. 112, § 115, to keep the gate in proper repair.

The fact that a horse escapes from the control of its owner, and passes from his
land adjoining a railroad through an open gate, at his private crossing, on to
the railroad tracks, does not make the horse a trespasser, or preclude the main-
tenance of an action against the railroad corporation for causing the horse's
death.

In an action against a railroad corporation for causing the death of the plaintiff's
horse, which escaped from his land adjoining the railroad through an open
gate which had been erected at his private crossing by the corporation, there
was evidence that the gate had remained open nearly all the time for about
two years, that the defendant's section-master had repeatedly passed through it
without attempting to shut it, and that it was in such a condition that it could
not be opened or shut by a reasonable effort on the part of those having occa-
sion to pass through it.   There was also evidence that the plaintiff and others,
who were accustomed to use the crossing, had habitually left the gate open for
two years or more, that it had become sagged and warped, and that its sagging was
caused by its being left open.   The plaintiff testified that he and his servants

always closed the gate during the first five or six years after it was erected, that it was left open because it was difficult to shut, and that he used to shut and open it when he could; and his servant testified substantially in a similar manner. *Held,* that the questions whether the plaintiff exercised due care in use of the crossing, and whether the defendant's negligence in failing to repair the gate was the sole cause of the accident, were properly submitted to the jury.

TORT for causing the death of the plaintiff's horse. Trial in the Superior Court, before *Maynard,* J., who allowed a bill of exceptions, in substance as follows.

The defendant's tracks ran north and south through the plaintiff's farm in Uxbridge. A few rods west of the tracks a highway ran parallel with the railroad, and just west of the highway were the plaintiff's house and barn. A private road or passageway led from a point in the highway opposite the plaintiff's house easterly across the railroad. This was formerly a town road, and had been abandoned as such in 1847. The plaintiff owned the land adjoining the railroad on both sides of it, and also the land adjoining the passageway on both sides of it. The plaintiff had a right to cross the railroad at this point, and used the passageway as a farm crossing. Others owning land east of the railroad beyond the plaintiff's farm crossed the railroad at this point, and also used the passageway as a farm crossing. Formerly the defendant had maintained cattle guards under its tracks on each side of the crossing. These had been abandoned, or, as the plaintiff testified, were exchanged for gates, and at the time the plaintiff's horse was killed, and for several years previously thereto, there were no barriers at the crossing to prevent the entrance of cattle upon the railroad, except these gates. The gates were put in by the defendant about ten or twelve years before the time when the plaintiff's horse was killed, on each side of the tracks and across the passageway, with suitable means for fastening them. They were made of spruce, weighed seventy or eighty pounds, were about twelve feet long, constructed of four parallel boards, were alike when put in, and neither of them had been altered or repaired in any way since they were put in up to the time of the accident. The east gate had always been kept shut by the plaintiff and all persons using the same, and remained in good condition, and was shut at the time of the accident. The west gate had been allowed by the plaintiff and others using it to remain open for several years,

and was open at the time of the accident, and had been open practically all of the time for two years. The plaintiff testified in regard to it, that he and his servants had always closed the gate during the first five or six years; that at the time of the killing of the plaintiff's horse the gate was sagged and warped, and it could be shut only with difficulty; that he had shut it only once in two years; that he then shut it only as an experiment, by lifting the outer end and carrying the end over the crown of the road and placing it in position, and that it would not fasten by three or four inches; that it had been sagged and warped for several years; that it hung on both hinges; that he had left the gate open for several years; that he knew of no other reason why it sagged except that the gate was left open; that it was left open because it was difficult to shut, and for the past two years it had been open about all of the time; that there was a post put in to fasten it when open and to keep it open when so fastened; and that he used to shut and open it when he could.

The plaintiff's servant, who had been in his employ about nine months before the killing of the plaintiff's horse, testified that, when he began using the crossing in haying time, he shut the gate once or twice, but that it was difficult to shut it, and it would not fasten; and that he did not shut it after that, or before, when he drove the plaintiff's cattle over the railroad to the plaintiff's field.

The section-master of the defendant corporation on that section of the railroad testified that the gate was warped and sagged, but was properly hanging on both hinges, and was whole; that it had been open about all of the time for two years; and that he and his gang of workmen had passed through it as many as three or four times during the year previously to the accident and found it open, and left it so without opening it or shutting it. A former section-master of the railroad at this point, who had been section-master from the time the gates were put in until two years previously to the accident, testified that the west gate was kept shut while he was there; that he had orders to see that it was shut; and that, at the time he left there, the gate was warped, but was hanging on its hinges properly, was whole, and could be shut, though the outer end dragged upon the raised portion of the rounded way and would stay shut when left so.

The plaintiff's horse escaped from his servant while he was harnessing it at the barn, ran thence across the highway, down the passageway, through the west gate left open as above stated, across the railroad tracks to the east gate which was closed, turned back just as a freight train came around a corner about four hundred feet north of the crossing, and thence ran south down the tracks. The plaintiff's servant was in pursuit of the horse, and stood upon the railroad near the crossing when the train passed him, and waved his hand at the men on the train. The train ran about four fifths of a mile after the engineer saw the horse before stopping, when it stopped about two hundred to three hundred feet from a bridge on the railroad. When the train stopped, the horse was nearly opposite the engine by the side of the banking of the track, and then proceeded to the bridge and entered upon the bridge, and his leg broke through, and he was taken out and killed by order of the plaintiff, who testified that the horse's leg was broken before he was got out, and after he entered the bridge; and it appeared that the fireman tried to prevent the horse from proceeding towards the bridge when the train stopped, and got out of his cab when the horse was near the engine for that purpose; that the plaintiff's servant was in pursuit; and that all of the defendant's servants put planks into the bridge, and did everything to help extricate the horse.

There was evidence tending to show that the train might have been stopped in one third of a mile, but this was contradicted by the train men and engineer, and by the fact that there was a long train and it was down grade, and all the train men testified that brakes were applied as soon as the horse was discovered. There was no other evidence of wanton recklessness on the part of any of the defendant's servants.

The defendant offered to show what barriers were used at the crossing before the gates were put in, and that bars were used only as barriers prior to that time. Upon the plaintiff's objection, the judge excluded the evidence; and the defendant excepted.

The defendant asked the plaintiff, on cross-examination, if he had ever requested the railroad corporation to repair the gate before the accident. Upon the plaintiff's objection, the judge excluded the question; and the defendant excepted.

At the close of the evidence, the defendant asked the judge to rule that, upon the evidence, the plaintiff was not entitled to recover, which the judge declined to do, and submitted the case to the jury upon instructions not otherwise excepted to.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. A. Gile*, for the defendant.

*G. S. Taft*, for the plaintiff.

KNOWLTON, J.   The trial seems to have proceeded on an assumption by both parties that the defendant was bound to erect and maintain fences on the sides of its railroad, in accordance with the provisions of the Pub. Sts. c. 112, § 115, which were first enacted in the St. of 1846, c. 271; and such an assumption was warranted by the facts stated in the bill of exceptions.

The gates on the sides of the railroad at the plaintiff's private crossing were put in by the railroad company ten or twelve years ago, and the evidence offered to show that bars had previously been used there instead of gates was immaterial.   The defendant contends that the evidence was competent, as tending to show that the plaintiff had not acquired a prescriptive right to have cattle guards maintained there as well as gates; but the plaintiff's case does not rest on the acquisition of a right to have the protection of cattle guards, but on the alleged neglect of the defendant to perform its duty to maintain a proper gate, or other barrier, on the westerly side of the railroad.

The question whether the plaintiff ever requested the defendant to repair the gate before the accident was immaterial to the issue, and the answer to it would have shown no more than a collateral fact which might or might not have borne upon the plaintiff's credibility.   It was asked in cross-examination, and we are of opinion that it was within the discretion of the court to admit or exclude it.

There was evidence tending to show that the gate had for a long time been suffered by the defendant to be out of repair and unfit for use.   It had remained open nearly all the time for about two years, and the defendant's section-master had repeatedly passed through it without attempting to shut it. There was testimony from different witnesses that it was in such a condition that it could not be opened or shut by a reason-

able effort on the part of those having occasion to pass through it. The jury might well find that the defendant neglected the duty to keep the gate in proper repair imposed upon it by the statute.

The mere fact that the plaintiff's horse escaped from control and passed through the gate to the defendant's tracks did not make him a trespasser, or preclude the plaintiff from recovery. *Browne* v. *Providence, Hartford, & Fishkill Railroad,* 12 Gray, 55. *Towne* v. *Nashua & Lowell Railroad,* 124 Mass. 101. *Amstein* v. *Gardner,* 132 Mass. 28.

The most difficult question in the case is whether the plaintiff showed that he was in the exercise of due care in the use of the gates. If he was negligent in failing to close the gate, and that negligence contributed to the accident, he cannot recover. There is much evidence indicating that he did not perform his duty in this respect. It was admitted that he and others, who were accustomed to use the crossing, had habitually left the gate open for two years or more, and there was evidence that the sagging of the gate was caused by its being left open. On the other hand, the plaintiff testified that he and his servants always closed the gate during the first five or six years after it was erected, that it was left open because it was difficult to shut, and that he used to shut and open it when he could. The testimony of the plaintiff's servant was, to the extent of his knowledge, of a similar character. We are of opinion that the questions whether the plaintiff exercised due care in the use of the crossing in view of the condition of the gate, and whether the defendant's negligence in failing to repair the gate was the sole cause of the accident, were properly left to the jury. They might well have found that the plaintiff failed to use such care as he ought to have done, but we cannot say that there was no evidence to warrant a verdict in his favor. For cases in support of our views, see *Eames* v. *Boston & Worcester Railroad,* 14 Allen, 151 ; *Estes* v. *Atlantic & St. Lawrence Railroad,* 63 Maine, 308 ; *Aylesworth* v. *Chicago, Rock Island, & Pacific Railroad,* 30 Iowa, 459 ; *Perry* v. *Dubuque Southwestern Railway,* 36 Iowa, 102 ; *Hammond* v. *Chicago & Northwestern Railway,* 43 Iowa, 168 ; *Toledo, Wabash, & Western Railway* v. *Cohen,* 44 Ind. 444.

*Exceptions overruled.*