[No. 12654. Department One. September 24, 1915.]

# E. S. SNODGRASS, *Respondent*, v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Appellant*.[1]

RAILROADS—ANIMALS ON TRACK—PRIVATE CROSSINGS—AGREEMENT —CONSTRUCTION. Under a right of way agreement whereby a railroad company was to maintain a private crossing and gates, which the owner could leave open at his own risk, the owner, in leaving the gates open, assumed only the risk of accidents happening at the crossing; and the contract did not supplant Rem. & Bal. Code, §§ 8730, 8731, making the company liable for stock killed on its failure to fence its track, where the stock escaped through the open gates to the public highway and strayed upon the track at a distant point.

SAME — ANIMALS ON TRACK — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether the owner of stock which he allowed to escape, and a railroad company which killed the stock upon its track, were *in pari delicto*, is a question of fact for the jury, if, upon the evidence, different minds might honestly reach different results.

SAME—ANIMALS ON TRACK—NEGLIGENCE—EVIDENCE—SUFFICIENCY. The evidence sustains findings that a motorman of an electric train was guilty of negligence in killing horses on the track, where it appears that the road was straight for a mile and a half and the horses had not been outside the rails, that the motorman would have discovered them, if he had used reasonable diligence, when within 350 feet from them, which would have been in time to have checked the train or given warning whistle and avoided the injury.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered February 24, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages for stock killed by a train. Affirmed.

*Graves, Kizer & Graves*, for appellant.

*Charles P. Lund*, for respondent.

HOLCOMB, J.—Appellant operates an electric railway extending southerly from Spokane. On a night in February,

[1]Reported in 151 Pac. 815.

1913, one of its south-bound passenger trains struck and killed four horses belonging to respondent, on its main track on the station grounds at West Fairfield. Respondent's suit for damages for such killing resulted in a verdict in his favor. Appellant challenged the sufficiency of respondent's evidence, which was denied. Besides the general verdict, the jury answered special interrogatories as follows:

"1.   Within what distance ought the motorman, in the exercise of ordinary care, to have discovered the horses on the track?   Answer: Three hundred and fifty ft. (350 ft.)

"2.   If the motorman had blown his whistle after he ought to have so discovered them, would that have avoided the injury?   Answer: Yes.

"3.   Within what distance from the horses did the motorman in fact discover them on the track?   Answer: When train struck horses.

"4.   If the whistle of the train had been blown after the motorman in fact saw the horses, would that have avoided the accident?   Answer: No.

"5.   Was the motorman previous to the accident exercising the usual and ordinary care and attention in looking ahead in the course his train was going?   Answer: No."

Appellant's motions for judgment *non obstante veredicto* and for new trial, filed in due time, were denied, and judgment entered on the verdict. Appellant's assignments of error raise two propositions: (1) That no negligence on appellant's part appears; (2) that respondent's own conduct occasioned the killing of his horses.

The complaint in this case and the answer thereto present a dual issue. The first theory of the complaint bases recovery upon contract, and the second upon negligence. The defense also rested largely upon appellant's conception of the legal. effect of a contract of the parties. The contractual relations were shown as follows: On December 15, 1905, respondent sold and conveyed to appellant's predecessor a right of way through his farm, and, as part consideration, received from the railroad company a writing as follows:

"Spokane, Washington, December 15, 1905.
"E. S. Snodgrass, City.

"Dear Sir: You have this day delivered to us deed for right of way running through land in the northeast quarter of section twenty-seven (27), township twenty-two (22), north range forty-four (44), E. W. M. In consideration of the execution of that deed by you we hereby agree to put in and maintain for you a private crossing at grade, across our right of way through your land, with good cattle guards on either side of said crossing, and with gates in the right of way fence.

"We further agree that you may leave the gates open from time to time as you see fit, but that the leaving open of said gates shall be at your risk or at the risk of whoever shall use such crossing. Very truly yours,

"Spokane & Inland Railway Co.,
"(Seal)  (Signed) By Jay P. Graves, President.
"Attest: Will G. Davidson, Secty."

Pursuant to this agreement, the company entered upon the lands, constructed its railroad, and put in a crossing over the track, and cattle guards on either side of the crossing. It was alleged and shown by respondent that the cattle guards were insufficient and were permitted to become and remain out of repair, and the gates in the right of way fence became out of repair, so that, on the day of the killing of the horses, they passed over the cattle guards upon the track and were struck by the train. As to this contract, appellant asserts that, by mutual agreement based upon a sufficient consideration, it changed the statutory rule of reciprocal duties, burdens and liabilities, by providing that respondent might at his pleasure leave the gates open, but "at his own risk." The statute, Rem. & Bal. Code, §§ 8730, 8731 (P. C. 433 §§ 89, 91), requires a railroad company, outside certain places and limits, to substantially fence each side of its right of way and at all public road crossings to construct and maintain safe and sufficient road crossings and a sufficient cattle guard on each side such crossing, outside of incorporated cities and towns, and gives any owner of land on both sides of the right

of way the right to put in gates himself for his own use, at such places as he sees fit, and renders the railroad company liable for any stock killed on its right of way when not fenced and guarded as required by the statute. By the contract the respondent obtained gates and a private crossing across the railroad, with cattle guards on each side the crossing, at the expense of the appellant, and the privilege of leaving the gates open at will; and appellant, so long as it substantially complied with its part of the contract, was relieved of liability for stock killed by it, unless wilfully or wantonly, of course, entering its right of way through gates left open by respondent. Appellant asserts these two propositions:

"(1) That for the mutual rights and obligations conferred and imposed by the railroad fencing act, the parties hereto substituted contractual rights and obligations. By their contract, plaintiff assumed the risk of all injury which might result to him from his leaving open the gates. The agreement did not relieve defendant of the duty of exercising reasonable care to avoid injury to plaintiff's horses after becoming aware of their presence on the track, but it did relieve defendant of the higher degree of care which it would owe to animals rightfully upon its track; the duty to keep a careful lookout for them, and to discover their peril in time to avoid injury if it were discoverable."

"(2) That plaintiff violated a statute when he left the gates open and turned his horses loose in the field where they might go upon the railway track. Their injury was the direct result of his unlawful act, for if he had not left the gates open they would have remained in the security of his field. Here again his unlawful act did not relieve defendant of the duty to exercise care to avoid injury to the horses after becoming aware of their presence, but it did relieve defendant from the duty of guarding against their presence."

These propositions as stated appear fair on their face, and very commendably admit much as legal duties against appellant not usually so candidly conceded. There are two faults in appellant's position, however. We consider that, if it is deemed that respondent waived the strict duty of the ap-

pellant under the fencing statute, appellant should in justice
be held to have waived the protection of the misdemeanor
statute referred to in its second proposition, although the
statute was subsequently passed; and furthermore, in our
opinion, respondent by his contract did not assume all risk
of loss or injury to his stock by leaving his gates open, ex-
cept upon his crossing, where his negligence would be direct
and concurrent. The result, however, depends upon the ap-
plication of the principles in measuring the mutual duties
and privileges of the parties and testing the question of the
negligence of one or the other as a question of law or one of
fact.

Appellant insists that, as to the question of negligence,
the conditions shown and relied on by respondent establish
that each contributed equally to the injury, and that in such
case, as a matter of law, they are *in pari delicto,* and there
can be no recovery; citing 2 Thompson, Negligence, §§ 1993,
2019, and 3 Elliott, Railroads (2d ed.), § 1209. This also
is a correct principle, but, again, the difficulty is in its ap-
plication—when we can say, as a matter of law, from the un-
controvertible facts, that the parties were *in pari delicto,*
and when the question must be left to the decision of the jury
under proper instructions.

There is no complaint made by appellant of any instruc-
tions given or refused by the trial court. We are asked to
determine from the record that there is no legal liability on
the part of appellant. This court has heretofore announced
its adherence to the rule that:

"Negligence is a question of law for the court only when
there can be but one conclusion drawn from the facts proven.
If different minds might honestly reach different results from
the facts, the question is one for the jury." *Thoresen v. St.
Paul & Tacoma Lum. Co.,* 73 Wash. 99, 131 Pac. 645, 132
Pac. 860.

These animals were not struck and killed within respond-
ent's enclosure. Assuming, for argument, that respondent,

by the provisions of the contract, assumed all the risk of his animals being injured or killed upon his crossing, or within the limits of his land crossed by the railway, if he left his gates open as permitted by the contract, and that the appellant would in such case owe no duty to keep a careful lookout for them and to discover their peril in time to avoid injury, if it were discoverable, and owed no duty of guarding against their presence, as asserted by appellant, such conditions would certainly apply only to the confines of respondent's land through which the railway passed and which was controlled by their contract. It would be an unjust rule that would relieve appellant of any duty of care or watchfulness toward respondent's animals, which might escape through his own gates and stray at large, wherever they might be found, even at a distant point on appellant's road. Upon such logic, if the respondent's animals had strayed fifty miles away and were on or in dangerous proximity to appellant's railway track, it could say that it was relieved of any care or watchfulness, and all liability save from utter wantonness of conduct. Such was not the effect of the contract, and such is not the law.

Respondent's evidence showed that his horses went from his field through his gates, out across the track, into the county road, and south to the farm of one Hayes, where they were noticed about two o'clock in the afternoon and where they remained some time. There was no way for the horses to get upon the right of way between respondent's crossing and Hayes' crossing; the station grounds where they were struck is north, and the Hayes place is south, of respondent's place. There was no place for them to get upon the track except at the Hayes' crossing. There were tracks upon the railroad track about the center, sometimes stepping off the track, but stepping right on again and following right up the center. There was snow on either side of the track, but it had been cleared off the track. There were no tracks of animals in the snow on the right of way. Several witnesses ex-

amined the track in the vicinity of the injury and found the tracks for some distance down the railway track inside the rails, but none outside. The railway track northward about half a mile and southward some distance from where the horses were struck is straight, with no cuts, and elevated a little above the ground. The inference is plainly deducible that, had the motorman kept a reasonable lookout ahead, he would have discovered the horses upon the railway track in time to check his train, or give warning whistle which would have tended to drive the horses from the track. These inferences were found as facts by the jury in answer to special interrogatories. The question of appellant's want of care was one of fact for the jury, and its finding was a finding of negligence on the part of the servants of appellant.

Appellant cites as controlling, *Dickey v. Northern Pac. R. Co.*, 19 Wash. 350, 53 Pac. 347. The case is wholly dissimilar. In that case a traveler, with the consent of the owner, turned his horses loose one night in a small triangular field, enclosed on two sides, and adjoining which on one side the railway company's track ran, fenced only on the opposite side from the field. This court said:

"To turn a band of horses loose in such a place without taking any steps to prevent their going upon the track and in the way of passing trains must be held in law such negligence as will prevent a recovery. Under such circumstances, it was only to be expected that the horses would stray upon the track and in the way of passing trains."

And manifestly in that case the contributory negligence of the owner of the horses continued up to, and concurred in, the injury. Such is not the fact here. Respondent did not turn his horses into a place of known, and to a certain extent unavoidable, danger. His negligence consisted in permitting his gates to be and remain open, and his horses to go through them. But they did not remain upon his farm crossing, where he assumed the larger burden of care over them, but went beyond and at large, where they were subject to the same

rules of law as to the care to be exercised toward them by appellant as apply to any and all such animals. There is evidence, and the jury specially found, that, in the exercise of ordinary care, appellant's motorman ought to have discovered the horses on the track a distance of three hundred and fifty feet from them; that if he had so discovered them and had blown his whistle, the injury would have been avoided; that he did not in fact discover the presence of the horses until at the moment the train struck them; that the motorman, previous to the accident, was not exercising the usual and ordinary care and attention in looking ahead in the course his train was going. Under such a state of facts, appellant was obviously liable, and the recovery was warranted. *Harris v. Missouri, K. & T. R. Co.*, 24 Okl. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858; *Eddy v. Evans*, 58 Fed. 151; *Kansas City, M. & B. R. Co. v. Watson*, 91 Ala. 483, 8 South. 793; *Missouri Pac. R. Co. v. Gedney*, 44 Kan. 329, 24 Pac. 464, 21 Am. St. 286; *Isbell v. New York & New Haven R. Co.*, 27 Conn. 393, 71 Am. Dec. 78; *Moses v. Southern Pac. R. Co.*, 18 Ore. 385, 23 Pac. 498, 8 L. R. A. 135; *Orcutt v. Pacific Coast R. Co.*, 85 Cal. 291, 24 Pac. 661; *Klockenbrink v. St. Louis & Meramec River R. Co.*, 172 Mo. 678, 72 S. W. 900; *Taft v. New York, P. & B. R. Co.*, 157 Mass. 297, 32 N. E. 168; 33 Cyc. 1228.

We find no error. Affirmed.

MORRIS, C. J., MOUNT, and CHADWICK, JJ., concur.