[No. 13546.   Department One.   December 29, 1916.]

BERT WILLETT, *Respondent*, v. OREGON-WASHINGTON
RAILROAD & NAVIGATION COMPANY, *Appellant*.[1]

RAILROADS—ANIMALS ON TRACK—NEGLIGENCE—EVIDENCE — SUFFI-
CIENCY.  The jury is warranted in finding negligence by a railroad
company in killing a horse on the tracks within yard limits where
fences were not required, although the horse was a trespasser, where
it appears that the horse was seen by the fireman of a passenger
train when about five hundred feet distant, and that there was evi-
dence that the train might have been stopped within that distance.

SAME — ANIMALS ON TRACK — CONTRIBUTORY NEGLIGENCE — EVI-
DENCE—SUFFICIENCY.  Where the law prohibiting stock from run-
ning at large was not in force, it is not contributory negligence, as
a matter of law, for a man to turn his horses out on the common
where they could go upon unfenced railroad tracks, where it appears
that he lived about a mile away and the horses had been in the
habit of grazing in the other direction and had not theretofore gone
upon the tracks.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered January 31, 1916, upon the verdict
of a jury rendered in favor of the plaintiff, in an action in
tort.   Affirmed.

*Bogle, Graves, Merritt & Bogle*, for appellant.

*Forney & Ponder*, for respondent.

PARKER, J.—This is an action in which the plaintiff seeks
recovery of damages which he claims resulted from the killing
of a horse belonging to him, by the negligent operation of
one of the trains of the defendant railroad company.   Trial
was had in the superior court sitting with a jury, which re-
sulted in verdict and judgment in favor of the plaintiff, from
which the defendant has appealed.

The principal contention of counsel for appellant is that
the trial court erred in denying its motion, made at the close
of all of the evidence, for a directed verdict in its favor,

[1]Reported in 162 Pac. 14.

which motion was rested upon the ground that the evidence called for the conclusion, as a matter of law, that appellant was not guilty of any negligence resulting in the death of respondent's horse, and also upon the ground that the evidence called for the conclusion, as a matter of law, that respondent's own negligence contributed to and caused the death of his horse.

The killing of respondent's horse, for which he here seeks recovery, occurred near the westerly end of, and within the side track or switch limits, at Lincoln Station, in Lewis county, and therefore at a point on appellant's track which was not required by law to be enclosed by fence. Rem. Code, § 8730. From a distance of half a mile or more east of appellant's depot at Lincoln Station to a distance of one thousand feet or more west of the depot, its main track runs in a straight line in a direction which, for present purposes, we will call west. Appellant's two or three side tracks at that station are south of the main track and for the most part west of the depot. An engineer and fireman upon an engine of a train running west over this straight portion of appellant's main track have an uninterrupted view along its whole length, and also for a considerable distance upon each side of its whole length. The small depot on the south of the main track and the side track next south appears to be the only building near or upon this portion of appellant's right of way. This, in any event, is true to the west of the depot. All along this straight portion of the track, it is elevated more or less above the natural level of the ground. To the west of the depot, the track is elevated, varying from two to twelve feet above the ground upon the north, the embankment along that portion being quite steep. At the foot of the embankment on the north, is a low tract of ground where stock are accustomed to graze. Some six hundred feet west of the depot, there is a path leading from this low ground diagonally up along the side of the embankment to the top, enabling stock to go upon the tracks. This apparently is the only means

of access to this portion of appellant's tracks from this low ground west of the depot, except at the road crossing immediately west of the depot.   There also appears, from the fireman's testimony, to be some low ground with grass growing on it such as might attract stock to the south of the tracks.   It does not appear, however, how stock could gain access to this low ground other than by crossing over the tracks, either from the path on the north side or by way of the road crossing near the depot.

Early in the morning of the day in question, but after the coming of daylight, a passenger train of appellant, consisting of an engine and four cars, was proceeding west through Lincoln Station.   There is some conflict in the testimony as to whether it stopped at the depot, though that is not very material here.   After passing the depot, at a point some seven hundred feet farther west, when it was running at some considerable speed, probably about twenty-five miles per hour, the engine struck respondent's horse, seemingly knocking or carrying it forward for some little distance and throwing it to the left or south side of the main track, its head striking a freight car standing on the side track and apparently killing it instantly.   The train did not stop or even slacken its speed between the depot and the place it struck the horse.  Assuming that the train stopped at the depot, as the jury might have concluded in the light of the evidence, it seems almost certain that the train was moving at a constantly increasing speed from the time it started therefrom until it struck the horse, about seven hundred feet to the west.  Tracks of a horse, which by reason of their peculiarity were identified with reasonable certainty as those of respondent's horse, were, within an hour or two after the accident, found in the path on the north side of the embankment and also along the main track to the west, indicating that the horse had come up the path from the low ground to the north and was going west along the main track when it was struck.   The

only witness testifying upon the trial who saw the horse upon the tracks and when it was struck was the fireman upon the engine.   His story is, in substance, that, after passing the depot a distance of from one hundred to two hundred feet, he saw two horses come up the bank from the low ground on the south and proceed across the tracks.   One passed over in front of the engine, the other, when upon the main track, turned back and was struck by the engine upon the hip and thrown forward almost directly in the direction the train was running, and fell to the left, as we have already noticed.   The evidence warranted the jury in believing that the horse was not struck by the engine until the train had run a distance of about seven hundred feet from the depot, which would be about five hundred feet from where the engine was when the fireman first saw the horses coming up over the south embankment and proceeding across the tracks.   From the south embankment to the main track at this point is about seventy feet.   There is in the record testimony warranting the jury in believing that the train could have been stopped within a distance of five hundred feet, or less, from where it was when the fireman said he first saw the horses, especially if the train stopped at the depot, requiring it to start from a standstill at that point.   This summary of the facts we think is as favorable to the contentions of the counsel for the appellant touching the question of its negligence as the record before us will admit of.

If we should ignore the testimony of the fireman, which was given for appellant after the respondent had rested his case, and look only to the evidence as it then stood, we would have a case substantially the same as the late case of *Snodgrass v. Spokane & Inland Empire R. Co.*, 87 Wash. 308, 151 Pac. 815.   That case was one involving the killing of horses by an electric railway train upon the track at a place where it was not required by law to be fenced, but where the horses were technically trespassers, as in this case, the accident oc-

curring at a point where the motorman had an unobstructed view along a half mile of straight track elevated a little above the natural ground, the horses having come upon the track and proceeded along it in the direction the train was running, as evidenced only by their own tracks made in the snow. The holding was that the jury was warranted in concluding that the motorman must have seen the horses upon the track in time to have avoided the accident. The only difference between that situation and this is that the tracks of the horses made in the snow were possibly somewhat more plain and easily identified than in this case. However, we need not rest our conclusion that there was evidence warranting the jury finding the appellant negligent alone upon this theory. But in view of this evidence, together with the testimony of the fireman that the horses were actually seen by him when the train had proceeded a distance of only from one hundred to two hundred feet past the depot, and the fact, as the jury might have believed from the evidence, that the train thereafter ran at increasing speed some five hundred feet further before the horse was struck, we cannot escape the conclusion that the jury was warranted in believing that the horse must have been seen by the engineer and was actually seen by the fireman in time to have avoided the accident. It seems to us that, under such a state of facts, the fact that the horse was technically a trespasser, and the rule that the appellant owed it no duty before it was seen by the engineer or fireman, does not, as a matter of law, free appellant from the charge of negligence.

Was respondent negligent? It is contended in appellant's behalf that respondent was guilty of contributory negligence, and it should be so decided as a matter of law, because he allowed his horses to run at large in the neighborhood of appellant's tracks. It appears that respondent lives and keeps his horses at a distance of about a quarter of a mile from the crossing at appellant's depot; that he was in the habit

of turning his horses out to run at large during the night-time; that they were in the habit of grazing at a place farther away from appellant's tracks than respondent's home, and had not, before the time in question, gone upon appellant's tracks or to the low ground to the north of the tracks where other stock seemed to be in the habit of going. It was not shown that the law relating to the running of stock at large, Rem. Code § 3172, was in force by order of the county commissioners in that portion of Lewis county, hence it seems plain that the mere fact that respondent allowed his horses to run at large during the nighttime did not render him guilty of negligence. It seems to us, therefore, that the question of his contributory negligence in this regard was such that appellant cannot complain of the fact that the trial court submitted that question to the jury. Under the *Snodgrass* case, *supra*, in the decision of which the case of *Dickey v. Northern Pac. R. Co.*, 19 Wash. 350, 53 Pac. 347, is distinguished, it seems plain that it could not be determined, as a matter of law, that respondent was guilty of contributory negligence.

Contention is made that the trial court erred in the giving of a number of its instructions and in refusing to give others requested by counsel for appellant. These claimed errors are but briefly discussed by counsel. What we have already said, we think, in effect disposes of these contentions. The principal argument directed against the ruling of the court touching the instructions seems to be, in substance, that the court erred in submitting to the jury the question of respondent's contributory negligence instead of in effect deciding it by its instructions as a matter of law, as requested by counsel for appellant. It seems to us that the instructions given, and those requested and refused to be given by the court, do not require further notice, in view of what we have already said.

We are of the opinion that the case was properly submitted to the jury, and that the questions of appellant's neg-

ligence and respondent's contributory negligence could not be determined as a matter of law.

The judgment is affirmed.

MORRIS, C. J., MAIN, ELLIS, and CHADWICK, JJ., concur.