82 So.2d 309

**ATLANTIC COAST LINE RAILROAD COMPANY**

v.

**D. C. NORRED.**

**5 Div. 455.**

Court of Appeals of Alabama.

Aug. 30, 1955.

Paul J. Hooton, Roanoke, for appellant.

D. T. Ware, Roanoke, for appellee.

BONE, Judge.

This is an action by appellee, plaintiff below, against the appellant, defendant below, for the negligent killing of three cows. Trial was had by a jury and a verdict was returned in favor of appellee in the sum of two hundred and fifty dollars, and judgment was entered accordingly. Appellant moved for a new trial and assigned as grounds therefor the court's refusal to give the affirmative charge in writing asked for by the defendant, and that the great preponderance of the evidence was in favor of the defendant. The motion for new trial was denied, and from said judgment defendant appeals.

Evidence for the plaintiff tended to establish that there had been found dead beside defendant's railroad track on the morning of December 12, 1953, three cows belonging to plaintiff. It was also shown that the cows had broken out of a pasture in which they were kept. Their escape from the enclosure was made possible by the fact that there had been much wind and rain on the night preceding December 12. A large limb had fallen across plaintiff's fence, knocking it down, thereby permitting the cattle to break out.

On the morning in question, plaintiff, along with his sons, was searching for the cows and went to the home of one Tony Glaze, who lived approximately a hundred yards from the railroad track and in or near the community known as Bacon Level, Alabama. Glaze was then employed by plaintiff to aid in the search for the cows.

The search resulted in the finding of the cows lying beside the defendant's railroad track at a point about three quarters of a mile up the track from the residence of Tony Glaze. All three 'cows were dead when discovered.

The testimony established that there had been about seven head of cattle in the herd when it was seen earlier that morning.

Plaintiff, testifying in his own behalf, stated that he was familiar with the noises of trains running fast and slow, that he had listened to them for approximately ten years, that he heard a train pass on the morning in question around 11:00 or 11:30, that he heard no whistle, and that the train was traveling upgrade toward Roanoke, coming from the direction of LaGrange. He was in an orchard near the railroad track at the time and did not see the train. He then walked up to the railroad track and there discovered the cows' tracks about a quarter of a mile from where the cows were later found dead. There were cows' tracks on each side of the railroad track and in the middle of the railroad track. The cows' tracks led up to the point where the

cattle were found dead. The plaintiff testified that the railroad track was fairly straight at this point.

Testimony of plaintiff was to the effect that the cattle were found at the bottom of a fill where they had been knocked from the track and were about fifty feet around a curve, that the train had struck the cattle just as it started in the curve and the cows' tracks did not lead on into the curve any further.

Tony Glaze, testifying for the plaintiff, stated that the track was straight from his house to the point where the cattle were killed, which was a distance of about three quarters of a mile, and that the cows were killed in the middle of the curve. He was following the cows at the time, but heard no whistle or bell. Although he did hear the train pass, he did not see it as he was in the orchard near the track. He testified further that he tracked the cattle up the railroad track to where they were found dead

Ida Glaze, wife of Tony Glaze, testified that the track was visible beyond the curve from a point in front of her house on the bank of the railroad track, that she saw the train pass about 11:30 a. m. on the morning in question and ran to the bank of the railroad and listened, but heard no whistle or bell, that she could see beyond the curve where the cows were killed, but saw no cows. On cross examination it was revealed that she could not see through the curve from the track but could see through it from a point on the bank of the railroad in front of her house. She further testified that the curve was about a quarter of a mile long and that her house was located about a hundred yards from the railroad and about three quarters of a mile from the place where the cattle were killed.

G. B. Hendon testified that he was familiar with the herd of cattle belonging to plaintiff and that he was familiar with the three cows in question. He had bought and sold cattle and knew the reasonable market value of these cows at the time they were killed. He testified that the reason-

able market value of the cows that were killed was $350. He was also familiar with the railroad at this point and had been for about forty years. Between Tony Glaze's house and the point where the cattle were killed was about a half or three quarters of a mile. There was a little curve between Tony's house and the point where the cattle were killed. A person could see from the railroad bank in front of Tony's house up to the curve where the cattle were killed, or within seventy-five or a hundred yards of where they were killed. The cattle were killed in a curve and the railroad track runs upgrade to the curve.

Jimmy Norred, son of plaintiff, was in an orchard about seventy-five yards from the railroad track at the time the train passed on the morning in question, searching for the cattle. After the train passed, he, in company with Tony Glaze, went on up to the track and found the tracks of the cattle leading up on the railroad. They tracked the animals about a quarter of a mile up the railroad track to the point where they found them dead. He heard the train pass between 11:00 and 12:00, but heard no whistle or bell sounding. He testified that he had heard many trains and was familiar with the sound when the train slowed down or speeded up, and that the train he heard at this time did not slow down. Cattle tracks were on each side of the railroad track and in between the rails from the point where he went on the railroad track to the point where the cows were found dead, which was about a quarter of a mile. It had rained the night before and the cattle had mud on their feet, making it possible to track them up the railroad track. He testified that a person could stand on the bank where the cattle were killed and see about a mile down the track in the direction from which the train had come.

W. R. Wilson, testifying for the defendant, stated that he was a section foreman, that he had been employed by the railroad for thirty-four years, and that this particular track was under his supervision. He had buried the cattle in question. He traveled the track about once or twice a

week and was familiar with it. He testified further that from a point in front of Tony Glaze's house a person could see up into a third of the curve where the cattle were killed, but that the cattle were killed on the north end of the curve, Glaze's house being south of the curve, and a person could not see to where they were killed. He further stated that it was a two degree curve at the point where the cattle were killed, the curve being a left curve, and there was a cut and a fill where a trestle had formerly been. The land next to the railroad goes sharply down to the water in swamps on both sides of the track. He testified that the cut just before going into the curve was deep, and that the cab of the train where the engineer sits is about seven or eight feet high, and a man sitting there could see much further up the track than one standing on the track.

C. W. Naish testified that he was the engineer on the train which struck and killed the cattle and that the accident occurred at 10:22 a. m. He was running about 35 miles per hour when he first saw the cows and employed all means at his control in an effort to stop the train. He was looking at the tracks with his hands on the controls at the time. He was in the curve when he first saw the cattle, the curve being in a cut, and he was about two hundred feet away when he first saw them. The cattle were running up the side of the fill as if excited, and he never saw any of them get on the track, however they were on each side of the track. It was impossible to stop the train after the cattle ran up on the side of the track.

D. C. Norred, called in his own behalf in rebuttal, testified that he and Mr. Hendon had stepped off the distance that one could see from the place where the cattle were killed, and that one could see 303 average steps back down the track. He stated that the cut was not as deep as the train top at the place where the cattle were killed. The cows' tracks led at least a quarter of a mile back down the railroad track in the direction from which the train came.

Appellant insists that the trial court erred in refusing its requested affirmative charge.

Title 48, Section 173, Code 1940 provides that a railroad company is liable for all damages done to stock resulting from any negligence on the part of such company or its agents; and when any stock is killed or injured by the locomotive or cars of any railroad, the burden of proof, in any suit therefor, is on the railroad company to show that there was no negligence on the part of the company or its agents.

In the instant case the appellee's evidence tended to establish that appellee's cows had been struck and killed by defendant's train. Thus, after this evidence was introduced tending to show that plaintiff's cows were killed by defendant's train, the railroad had the burden of overcoming or rebutting the prima facie case thereby established. Louisville & N. R. Co. v. Green, 222 Ala. 557, 133 So. 294; Louisville & N. R. Co. v. Holmes, 32 Ala.App. 551, 27 So. 2d 878.

The engineer testified that it was impossible for the train to have been stopped after he saw the cows run up on the railroad track, and further that he used all means under his control in an effort to stop the train. He testified that he blew the whistle and rang the bell, and that he was watching the railroad track at the time.

Against this evidence, the plaintiff's evidence tended to show that the cows' tracks had not left the railroad track for a distance of about a quarter of a mile from where they were struck and killed. It tended to show further that neither a whistle nor a bell sounded when the train passed the point where the cattle were killed, and that the engineer could have, in the absence of negligence, discovered the cattle in time to stop the train.

From the foregoing testimony, we are of the opinion that the question of negligence was properly left to the jury.

It is true that when an animal is not on the track and is not discoverable by due

diligence until it suddenly leaps on the track so near an approaching train that no action could prevent injury to it, the engineer is not required to attempt to stop the train. Kansas City, M. & B. R. Co. v. Watson, 91 Ala. 483, 8 So. 793.

However, it is clear that, under the conflicting evidence set out, the jury, if they believed the evidence presented by the appellee, under the rule, were fully warranted in returning a verdict for the appellee.

Neither do we think that the preponderance of the evidence was so in favor of the defendant as to entitle it to a new trial.

For the reasons above stated, we are of the opinion that the case should be and the same is hereby affirmed.

Affirmed.