208 So.2d 911

**LOUISVILLE & NASHVILLE RAILROAD COMPANY**

v.

**Richard A. LEWIS.**

**4 Div. 621.**

Court of Appeals of Alabama.

Feb. 20, 1968.

Rehearing Denied March 12, 1968.

---

[1] Compare "bench docket" in Pittsburgh, C., C. & St. L. Ry. Co. v. Johnson, 49 Ind.App. 126, 93 N.E. 683, 95 N.E. 610.

Jas. A. Mulkey, Geneva, for appellant.

Jos. P. Hughes, Geneva, for appellee.

JOHNSON, Judge.

In the court below plaintiff (appellee) sued defendant (appellant) for the negligent killing of two of plaintiff's cows. Trial was had by a jury and a verdict was returned in favor of the plaintiff in the amount of $195.00. Judgment was entered accordingly. Hence, this appeal.

Testimony by appellee (plaintiff below) tended to show that on the morning of December 12, 1964, a little before six o'clock, he heard a "whistle that didn't sound exactly right;" that around seven A. M. he went in search of his cows; and

that he found two of them lying beside the tracks of the appellant railroad. Appellee further testified that the cows were about one-half mile from each other and that they were "pretty well mangled up." Appellee said in part, on direct examination, as to the description of the track where the cows were found:

"Q. You say there is about three quarters of a mile of straight track where one cow was hit?

"A. That's right.

"Q. About how far to the other one?

"A. About half-a-mile.

"Q. All right. Now, this would be coming from Graysville?

"A. That's right."

Questioned further as to the whistle he heard, appellee stated the following:

"Q. I believe you testified that you heard this whistle blow. What time of day was it?

"A. It was early in the morning, I imagine it was a little before six o'clock.

"Q. Which direction would the train be going at that time?

"A. Going towards Geneva.

"Q. From Graysville toward Geneva?

"A. Yes, sir."

Appellee further stated that there were no roads within one-half mile of either cow.

On cross-examination appellee admitted that he was not "real positive" as to whether the cows were killed the morning that he found them or the night before but that he figured "one of them was killed that morning for sure, because just going by the whistle blowing." Appellee was also questioned as to the schedule of the trains:

"A. Early in the morning or late in the evening is when the trains are running.

"Q. The train never does come from Graysville late in the afternoon?

"A. No, early in the morning."

Elbert Dolohite, testifying for the appellant, said that he was the fireman on the train which was proceeding out of Graysville headed toward Geneva on the afternoon of December 4, 1964; that the train was powered by a diesel engine in good working condition and properly equipped; that it had two different kinds of brakes; that it had service brakes and emergency brakes both of which were in good working condition; that the train was pulling 22 to 25 cars; and that at about the area where the cows were struck the speed of the train was about 25 to 30 miles per hour. Dolohite further testified that at that speed with the number of cars the train was pulling, about one mile stopping distance with a service application of the brakes would be required. He also testified that by using the emergency brakes the train would stop between 400 and 600 feet.

Dolohite stated that as the train was coming around the curve he saw something on the track; that he was sitting on the left side of the engine; and that the curve was to the right. He then testified that what he saw was two cows standing about the track; that the engineer made a service application of the brakes; blew the whistle and rang the bell; and that the engine hit the two cows. He said that at the time he first saw the cows they were about 200 feet away. Appellant then had Dolohite identify three photographs which purported to show the track at the point where the cows were struck. Subsequent to Dolohite's testimony, appellant also introduced into evidence a plat showing the distance of the curve of the track where the cows were found.

Mr. Cushion then testified for appellant that he was the engineer on the train which killed two cows on the afternoon of December 4, 1964, and that the train was in good working condition. He said it was "fairly dark" at the time and he didn't see the cows until the train was 150 feet away. On cross-examination, Cushion stated that from his position on the train, looking straight down the track, he could see about 200 feet ahead. He said, "There was a curve there, and there was a little high grass on the sides, and I just came around the curve."

Tit. 48, Sec. 173, Code of Ala., 1940, states:

"A railroad company is liable for all damages done to persons, or to stock or other property, resulting from a failure to comply with the requirements of the three preceding sections, or any negligence on the part of such company or its agents; and when any person or stock is killed or injured, or other property destroyed or damaged by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show a compliance with the requirements of such sections, and that there was no negligence on the part of the company or its agents."

■ Thus, if the plaintiff makes out a prima facie case, either positively or circumstantially, that the cows were killed by appellant's train, then the burden of proof shifts to the appellant to show that there was a compliance with the statutory provisions and that there was no negligence on the part of appellant or appellant's agents. Birmingham Southern Railway Co. v. Morris, 9 Ala.App. 530, 63 So. 768; Northern Ala. Ry. Co. v. White, 14 Ala. App. 228, 69 So. 308; Atlantic Coast Line Railroad Company v. Norred, 38 Ala.App. 291, 82 So.2d 309.

Appellant contends in his assignments of error that the trial court erred in refusing appellant's written charges which in effect were general affirmative charges.

It is stated in Carr v. Alabama Great Southern Railroad Co., 43 Ala.App. 51, 179 So.2d 328, 330:

"A railroad company may be entitled to a general affirmative charge when it is established by uncontradicted proof that an animal, not on the tracks and not discoverable by the due diligence, suddenly leaps on the tracks so near an approaching train that no action could prevent injury to it."

See also Louisville & N. R. Co. v. Green, 222 Ala. 557, 133 So. 294; L. & N. R. Co. v. Holmes, 32 Ala.App. 551, 27 So.2d 878.

In the case at bar, the testimony of the fireman and the engineer alone, coupled with nothing more from the appellee except testimony sufficient to make a prima facie case, would entitle appellant to the general affirmative charge.

■ However, the testimony from appellee did more than make out a prima facie case. Appellee testified that there was three-quarters of a mile of straight track where one cow was hit coming from the direction of Graysville and that the two cows were one-half mile apart. Defense witnesses testified that the cows were standing in a curve and because of this they were not seen until the train was 150 to 200 feet away.

This conflict in testimony describing the track where the cows were hit, leads us to conclude that a jury question was presented as to whether appellant's engineer, by the exercise of due diligence, could have seen the cattle in time to avoid hitting them. L. & N. R. Co. v. Holmes, supra; Louisville & N. Railroad Co. v. King, 259 Ala. 358, 67 So.2d 51; Carr v. Alabama Great Southern Railroad Co., supra.

We are of the opinion that the trial court was correct in refusing appellant's written charges and was also correct in overruling appellant's motion for a new trial.

There being no other assignments of error, the judgment in this cause is due to be and the same is hereby

Affirmed.